[Civ. No. 13646.   First Dist., Div. One.   Mar. 17, 1948.]

CALIFORNIA CASUALTY INDEMNITY EXCHANGE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, ORA LEE ELLISTON et al., Respondents.

418

John J. Ferdon and Burbank, Laumeister & McFarland for Petitioner.

T. Groezinger and John A. Rowe, Jr., for Respondents.

PETERS, P. J.—On July 18, 1944, Ora Lee Elliston suffered a head injury in an industrial accident. He was hospitalized for a short period and then returned to work. He suffered severe headaches and other ills and was forced to be frequently absent from work. His condition progressively grew worse until in December, 1945, he became completely paralyzed on the left side. The employer and its insurance carrier, while disputing that the injury of July 18, 1944, caused the paralysis, nevertheless furnished medical care and hospitalization during certain periods. The commission has found that the paralysis, which is permanent in nature, was caused by the blow received in the accident and has made its award accordingly. This portion of the award is not challenged by the petitioner. In its findings and award dated January 6, 1947, the commission also found that the employee had incurred expense for medical treatment, hospitalization, drugs, medicine "and for nursing care" and found that unless the parties could amicably adjust the amounts for such items that the commission would fix the reasonable amount thereof. It was also found that the employee was entitled to further medical treatment, hospitalization and "nursing care," and the award so provided. The petitioner did not see fit to challenge this award. The record shows that thereafter the parties agreed as to the amount of the doctors' bills, and hospitalization costs, etc., but could not agree as to the amount that should be awarded, if any, for past nursing services. A hearing was had on this issue on July 7, 1947. On August 14, 1947, the commission filed its findings, conclusions and award. It found that: "It is true that Ruth Elliston, applicant's wife, has rendered services to the applicant herein over and above those services which a wife renders to her husband under general circumstances. It is further true that

the services thus rendered were reasonably required to cure and relieve applicant from the effects of injury herein, and that but for the rendering of said services by said Ruth Elliston, the defendant carrier herein would have had to pay for nursing services in excess of the amount found herein to cure and relieve applicant from the effects of said injury.'' The commission further found that the services were rendered from April 5, 1946, to September 27, 1946, and from November 25, 1946, to February 26, 1947. From September to November, 1946, the employee was hospitalized, and since February, 1947, the employee has been in a rest home. The reasonable value of the services rendered was fixed by the commission at $7.00 per day, and an award made totaling $1,890. On this petition no contention is made concerning the amount of the award, the sole contention being that the commission had no power to make an award for the nursing services rendered to the injured employee by his wife under the circumstances disclosed by this record.

The circumstances under which the wife undertook to perform these services are as follows: There is no dispute that this employee was completely paralyzed on the left side, was bedridden, and needed attention. The attending physician was Dr. O. W. Jones. The patient was in the hospital. Under these circumstances Dr. Jones, according to Mrs. Elliston, and her testimony is uncontradicted, told her that the hospital was short of help and overcrowded and that her husband needed a great deal of attention, that the hospital was unable to give her husband the care he needed, and suggested to her that she care for him at home. She told the doctor that she was ''a fairly good practical nurse,'' and thought that she could perform the required tasks. The doctor told her that if she would attempt to care for her husband he would instruct her in what to do. The doctor stated that he thought the patient would be happier and would progress faster at home. Mrs. Elliston further testified that the attending physician explained about the various medicines to be given the patient, about back rubs and required enemas, etc.; that when her husband first came home she put him in a wall bed, but in a short time the insurance company ''found I couldn't make it and the insurance company gave me a hospital bed''; that her duties in caring for the patient were most confining; that ''I couldn't do anything at all except nursing. It was a night and day job''; that she gave the patient his required medicines; that his back had to be rubbed

frequently; that his legs itched and had to be rubbed with lotion; that he had to have enemas; that he was very ill and wanted attention every 15 or 20 minutes; that she had to devote full time to caring for him; that he suffered from severe headaches; that he could not turn over or lift his head without assistance; that she had to lift him and turn him constantly; that she could not leave him at all; that she was forced to neglect her household duties and to send out her laundry so she could devote her full time to nursing the patient; that on occasion she had to hire outside help when it was necessary to air the bed; that she cared for him on a 24-hour shift; that prior to her marriage she had been gainfully employed; that while nursing her husband she had been offered a position at $70 a week but turned it down in order to nurse her husband. On cross-examination she admitted that she had made no formal request to the insurance company for a nurse.

There also appears in the record a letter from one of the insurance company doctors, Dr. Walter F. Schaller, addressed to the insurance company, stating that he had visited the patient at his home on June 1, 1946, and that ''I found Mr. Elliston in bed at home, attended by his wife who is a very intelligent and cooperative woman.'' Another letter from the attending physician, Dr. Jones, addressed to the insurance company and dated September 20, 1946, describes the patient's condition and then continues: ''If this patient cannot be cared for at his home, it will then be necessary for him to be placed elsewhere—preferably in a rest home. He requires no special therapy other than being helped to move, and from time to time some hot packs to his shoulder girdle area—in other words, he is primarily a nursing problem which could be handled by a practical nurse.''

Under this evidence we believe the commission was justified in making an award for the nursing services rendered to the injured employee by the wife of the employee. Section 4600 of the Labor Code provides: ''Medical, surgical, and hospital treatment, including nursing, medicines . . . which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment.'' It is the contention of the petitioner that, under this section, the employer is responsible for the reasonable cost of nursing care supplied

to the injured employee only where the employer with knowledge of the need neglects or refuses to supply such care. It is urged that here the employee never requested nursing care, that Mrs. Elliston undertook the job voluntarily, that she at no time refused to perform the job without compensation, and that she made no demand upon the insurance company for payment until after the services had been performed.

There is a series of commission decisions discussing the problem as to when and under what circumstances members of a family may recover for nursing services rendered to an injured employee. These decisions indicate that the policy of the commission has not been entirely consistent. Most of these cases have been collected and commented upon in 1 Campbell's Workmen's Compensation, page 649, section 732, where it is stated: ''In the normal case it is not the policy of the Commission to allow nursing charges for services rendered by members of the family of the injured employee, unless such member is by occupation a graduate or practical nurse, or was regularly employed and had to relinquish such employment in order to do such nursing, and attended to the employee with the consent and approval of the attending physician. When the burden upon members of the family becomes unusually great, as where daily catheterization throughout life is required, and the wife does this, obviating the services of a nurse, she is entitled to some reasonable payment therefor. No payment is warranted, however, for services reasonably within the field of duty under the marital obligation.''

The same apparent inconsistency exists in the cases decided by the courts. The only California case that appears to have discussed the point is *County of Los Angeles* v. *Industrial Acc. Com.*, 8 Cal.App.2d 492 [48 P.2d 97]. In that case an employee was injured in an industrial accident and was furnished hospital and medical care. She was finally discharged from the hospital and thereafter received office care. She requested an allowance of $135 as the reasonable value of the services rendered to her by her son during the first three months after she left the hospital. These services, according to the opinion, consisted in the boy helping his mother to put on and take off a required back brace. At no time was a request made for nursing assistance and, so far as the opinion shows, no one connected with the employer knew she required or was receiving this assistance. It was held that there was no neglect or refusal to furnish the ser-

vices, and that such services were rendered by the son gratuitously. The award for such services was annulled.

There is a series of cases from other states where awards for such services have been annulled or a denial of an award affirmed. (*Galway* v. *Doody Steel Erecting Co.*, 103 Conn. 431 [130 A. 705, 44 A.L.R. 693] ; *Meister* v. *E. W. Edwards & Son*, 264 App.Div. 963 [37 N.Y.S.2d 56] ; *Coates* v. *Warren Hotel*, 18 N.J.Misc. 122 [11 A.2d 436] ; *City of Milwaukee* v. *Miller*, 154 Wis. 652 [144 N.W. 188, Ann.Cas. 1915B 847, L.R.A. 1916A 1] ; *Claus* v. *De Vere*, 120 Neb. 812 [235 N.W. 450] ; *Bituminous Casualty Corp.* v. *Wilbanks*, 60 Ga.App. 620 [4 S.E.2d 916] ; see, also, anno. 44 A.L.R. 697 ; cases collected 71 C.J. § 489c, p. 774.) In one of the most recent cases where the factual situation was somewhat similar to the one here involved an award for such services was affirmed, and several of the above cases distinguished. (*Daugherty* v. *City of Monett*, 238 Mo. 924 [192 S.W.2d 51].)

It would serve no useful purpose to analyze the facts of, and the law announced in, the above cases where the right to such compensation has been denied. Several of them are predicated upon the interpretation of statutory provisions radically different from section 4600 of the Labor Code. Several of them involve factual situations where the services rendered were of a minor character and were rendered without the knowledge of the employer. Several of them cite the rule that the wife cannot sue her injured husband for the reasonable value of such services, and assume that the insurance carrier of the employer can raise the same defense that could be raised by the employee—a complete *non sequitur*. We agree with the rule that where the services are rendered without the knowledge of the insurance company and are not of an extraordinary nature, that a member of a family should not be permitted to claim a right to compensation. But that is not this case. The statute involved entitles the injured employee to nursing care ''reasonably required to cure or relieve from the effects of the injury.'' (Lab. Code, § 4600.) The commission has found that this employee needed such care. There is no doubt that such finding is amply supported, and the petitioner makes no contention to the contrary. The insurance carrier had full knowledge that such services were needed and that they were being adequately performed by the wife. The record shows that Dr. Jones, the attending physician, and the agent of the insurance carrier, knew that such services were required, and re-

quested Mrs. Elliston to perform them. He told her that the hospital was overcrowded and understaffed and that her husband could not secure the required care at the hospital. He also instructed her how to perform her most onerous duties. He knew that those duties were being performed. The wife refused lucrative employment elsewhere in order to perform these services. The services were not of a minor character. This man was a hospital case and required the equivalent of hospital treatment and the insurance company knew it. The agent of the insurance company secured the services of the wife in lieu of the hospital treatment. The petitioner argues that under section 4600 it is liable for such services only where it, with knowledge of the need, neglects or refuses to supply such services. It may be assumed, for the purposes of this opinion, that such is a proper interpretation of section 4600. But such assumption in no way assists petitioner. This is not a case where the insurance carrier neglected, without knowledge of the need, to supply such services, and they were secured by the employee. Far from neglecting or refusing to furnish such services the insurance carrier, with full knowledge that such services were required, through its agent, impliedly, if not expressly, requested Mrs. Elliston to perform them. The insurance carrier, in legal effect, contracted with Mrs. Elliston for her to supply such services. The petitioner had no right to presume that Mrs. Elliston was going to assume gratuitously the legal duty it owed to her husband. While her failure to request compensation during the periods the services were being rendered is a factor that could and undoubtedly was considered by the commission in determining whether Mrs. Elliston was acting gratuitously, such factor alone does not overcome, as a matter of law, the finding that the services were not rendered gratuitously. Under such circumstances we are of the opinion that the award of the commission was justified under section 4600 of the Labor Code.

The award is affirmed.

Bray, J., concurred.

WARD, J.—I dissent.

Under the provisions of the Workmen's Compensation Act an employer who neglects or refuses to supply nursing for an employee is liable for the reasonable expenses incurred. (Lab.

Code, § 4600.) The liability is based upon a neglect or refusal to supply the nursing.

The injury occurred July 18, 1944. The attention by the employee's wife at his home dated from April 5, 1946, to September 27, 1946. On the latter date the employee was returned to the hospital. On November 25, 1946, he was taken home and remained there until February 27, 1947, at which time he was sent to a rest home.

An adjustment or compromise of the disability claim was approved by the commission but set aside and a new hearing ordered. The referee before whom the hearing was held suggested that the nursing bill of the wife might be compromised by the respective parties but this suggestion was not followed by the insurance carrier. The award of $7.00 per day, amounting to $1,890, followed the refusal of the carrier to compromise.

The majority opinion states that ''We agree with the rule that where the services are rendered without the knowledge of the insurance company and are not of an extraordinary nature, that a member of a family should not be permitted to claim a right to compensation.'' I assume that the attention given or the services rendered in this case may not be classified as ''of an extraordinary nature.'' I agree with that portion of the quotation in the majority opinion from 1 Campbell's Workmen's Compensation, page 649, section 732, that nursing charges by members of the family of an employee, unless by a graduate or practical nurse, are not allowable, and that no payment is warranted reasonably within the field of duty under the marital obligation, but I disagree, as the majority opinion holds, that the insurance carrier ''impliedly, if not expressly'' requested Mrs. Elliston to perform the services in expectation of payment therefor.

After numerous continuances caused by Mrs. Elliston's former attorney, on July 7, 1947, the referee declared: ''The nursing services are in error. They are never allowed in these proceedings, and the reason for that is that the wife takes her husband for better or for worse, and unless there is a contract, expressed or implied, by virtue of services rendered, the Commission has invariably held that the wifely services are not recoverable.'' At the same hearing the wife testified that no request was made for nursing services to the insurance company and that she had no experience in nursing. She had mentioned the matter to her former attorney but did not know whether he had communicated with the employer or the insurance carrier. She stated that she had never been engaged in

remunerative employment at any time during her married life, but had been offered a position at $70 a week during her husband's illness, which she did not accept, even during the period when her husband was in the hospital.

The conclusion is reached in the majority opinion that "impliedly, if not expressly" a contract was entered into between the wife and one of eight physicians and surgeons who treated the employee at various times. It is not claimed that the doctor was regularly employed by the insurance carrier though his first report of examination and diagnosis of the employee's physical condition after he had been treated by other physicians was made to the insurance carrier. The doctor was paid for his services on an order made by the commission directed to the carrier. There is no evidence that the employer or the carrier authorized the doctor to engage nursing service for the employee. There is no evidence that the doctor said anything that could reasonably lead Mrs. Elliston to believe she would be paid for her wifely nursing and attention. There is no evidence that the physician ever suggested to the carrier that the wife should be paid for her services. There is no evidence that at the time the employee was permitted to go home, the wife ever contemplated that she would or should be paid for her services. No application was made for payment to the wife until many months after the employee returned home.

Whether the carrier neglected and refused to supply nursing care (Lab. Code, § 4600), and whether an implied or express oral contract had been entered into by the employer or insurance carrier and the employee or his wife, presented questions of fact. It is the reviewing court, not the commission, that has determined that "impliedly, if not expressly" a contract was made between the respective parties.

Evidently the commission had no thought of an express or implied contract. The finding of the commission is: "1. It is true that Ruth Elliston, applicant's wife, has rendered services to the applicant herein over and above those services which a wife renders to her husband under general circumstances. It is further true that the services thus rendered were reasonably required to cure and relieve applicant from the effects of injury herein, and that but for the rendering of said services by said Ruth Elliston, the defendant carrier herein would have had to pay for nursing services in excess of the amount found herein to cure and relieve applicant from the effects of said injury."

According to the record the ordinary charges payable to practical nurses is $8.00 per day. The wife requested $10 per day. The amount fixed by the commission was $7.00 per day. The commission found that nursing services were required and that the carrier would have to pay "in excess of the amount found herein to cure and relieve applicant from the effects of said injury."

The point is not the amount involved, but whether any relative or friend may take over a task of nursing, without requesting approval of the party who will eventually be called upon to pay, give the impression by failing to file a timely claim that the services are rendered because of love for the injured employee, and thereafter reap a reward, as in this case, in the sum of $1,890.

Heretofore the general rule has been to deny such application. In one instance the employment of a relative, not a trained or practical nurse, has been ruled upon. In *County of Los Angeles* v. *Industrial Acc. Com.*, 8 Cal.App.2d 492 [48 P.2d 97] a claim for wage adjustment for nursing services rendered by the injured party's son was presented and allowed but annulled on review. As in this case, the nursing assistance was necessary. At page 493 the court said: "On the other hand, it is admitted that after her discharge from the hospital she made no request to the county or its representatives for the services of a nurse. Substantially the only support for the claim in this respect is that she went to the physician's office regularly once a week and that he must have known that she needed nursing services, but made no arrangement for her to obtain such services." Then follows the statutory provision involved in this case. The court continued (p. 494): "So far as appears from the evidence the services rendered to the employee by her son were rendered by him gratuitously, as by a son to his mother, and without any contract or claim for compensation. We find no authority for the proposition that under these circumstances there was any legal foundation for a subsequent claim such as was allowed by the award in this case. In *Galway* v. *Doody Steel Erecting Co.*, 103 Conn. 431 [130 A. 705, 44 A.L.R. 693], the Supreme Court of Connecticut had under consideration the validity of an award in favor of the claimant's wife for services rendered in nursing him during convalescence, in a proceeding brought under the Workmen's Compensation Act of that state. The injured employee had been transferred from the hospital to his home because the surgeon in charge advised that his recovery would be has-

tened thereby, and with the knowledge that the claimant would need a very considerable amount of nursing from his wife. In holding against the claim for compensation on account of services thus rendered by the wife the court said: 'His helpless condition doubtless required that Mrs. Galway should be in attendance or within call, but there is nothing in the finding to show that the services rendered were other than those which might reasonably be expected from any affectionate wife who was physically able to give them, or that they were not voluntarily and gratuitously rendered.' '' As stated in the County of Los Angeles case (p. 494): ''This same observation may appropriately be made in the case at bar.''

The award insofar as it covers the wife's claim should be annulled.