[Civ. No. 12029. Fourth Dist., Div. Two. Aug. 24, 1972.]

NANCY L. HENSON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
STANDARD OIL COMPANY OF CALIFORNIA, Respondents.

## COUNSEL

Byhower, Longley & Petherbridge and Richard W. Petherbridge for Petitioner.

Lawler, Felix & Hall and Kenneth B. Wright for Respondents.

## OPINION

**TAMURA, J.**—The primary issue posed by this proceeding concerns the right of a family member to be compensated for personal services rendered at home in caring for an injured employee.

In 1947, while employed by respondent Standard Oil Company of California (Standard), petitioner's husband, Edward N. Henson, suffered a severe industrial injury which necessitated the amputation of his right leg at the knee. Standard, permissively self-insured, was ordered to pay compensation and provide lifetime medical care. Mr. Henson later returned to work for Standard in a limited capacity as a truck dispatcher and continued in that position until his retirement at age 65 on August 31, 1963. He died in 1969. Following Mr. Henson's death, petitioner filed a claim for the reasonable value of services performed by her in caring for her husband at home from the date of his retirement until his death, for reimbursement for doctor bills incurred in treating Mr. Henson for a heart condition and for medication and drugs consumed by him. The referee made an award for all items claimed.[1] The board granted Standard's petition for reconsideration and set aside the referee's award for all items claimed except for bills incurred for drugs and medication.[2] Petitioner seeks review and annulment of the board's decision on reconsideration insofar as it denied her claim for compensation for personal services and

---

[1] The referee's total award of $43,704.42 consisted of the following: $41,200 for nursing services, $538.30 for doctor bills and $1,966.12 for drugs and medication.

[2] The sum of $1,966.12 was awarded for drugs and medication consumed by Mr. Henson for an ulcer condition and for relief of pain resulting from the industrial injury.

for reimbursement for doctor bills incurred and paid for the treatment of Mr. Henson's cardiovascular condition.

The evidence pertaining to petitioner's claim for personal services was virtually without conflict. It may be summarized as follows: In 1947 Mr. Henson suffered severe injuries to his head, back, shoulder and legs when a truck tire he was mounting exploded. The injuries necessitated the amputation of his right leg. In 1950 he was awarded permanent compensation benefits and lifetime medical care.[3] In 1957 he underwent a revision of the stump of his amputated leg and thereafter Standard permitted him to return to work in a limited capacity as a truck dispatcher. He continued in that job until his retirement on August 31, 1963.

Petitioner had not worked full time outside the home since 1952. Until 1961 she had worked several hours a day at home by taking in ironing. Following her husband's retirement in 1963, she devoted all of her time to caring for him. On rare occasions when she left the house, her married daughter remained with Mr. Henson because they were afraid he would fall when he attempted to walk.

Petitioner's description of her day which she testified was typical of her days from 1963 until Mr. Henson's death was as follows: When she arose in the morning, she emptied Mr. Henson's urinal, set out a tray with materials so he could wash himself, and prepared his breakfast and took it to him to his bed. After breakfast she helped him dress, helped him put on his artificial leg, and assisted him to the living room. Whenever he went to the bathroom, she had to assist him because his legs would sometimes give way. When he was in pain, she gave him medication which she kept in a drawer beyond his reach so he would not take excessive amounts. At lunch time she prepared a tray of food and took it to him in the living room. Before dinner she assisted him with his bath by helping him undress, helping him remove his artificial leg, and assisting him in getting in and out of the tub. At bedtime she helped him undress and

[3]The referee's award provided in pertinent part: "Applicant is also entitled to such further medical care, hospital and sanitarium treatment, including nursing, medicines, medical and surgical supplies, also including artificial supports or members as may reasonably be required to cure or relieve from the effects of said injury, also including stump socks, also including revision of stump if required, also including necessary repairs and replacements of artificial supports or members and stump socks as may reasonably be required from time to time through the remainder of applicant's life, all to be provided by Standard Oil Company of California, a corporation, and in case of its neglect or refusal seasonably to do so, it shall be liable for the reasonable expenses incurred by or on behalf of said employee in providing the same, to be fixed subsequently by this Commission upon the filing of itemized bills herein and approval by this Commission in the event the parties are unable to adjust the same out of Court."

remove his artificial leg, and gave him medication for relief of pain and sleeping tablets. During the night she frequently had to get up because he complained of pain. She would give him medication and rub his shoulder and the stump of his leg for about 20 minutes until the pain ceased.

In 1956 Mr. Henson was hospitalized for a few days for an ulcer condition and in 1968 for a heart condition.

Dr. Kraushaar, a physician paid in part by respondent and in part by Mr. Henson, treated decedent from 1952 until his death. The treatment consisted primarily in administering cortisone injections for the persistent pain resulting from the industrial injury. Dr. Kraushaar testified that Mr. Henson was unable to use crutches because of pain in his shoulders and that he needed assistance in getting in and out of bed, putting on his artificial leg, going to and from the bathroom, and getting in and out of the bathtub, all of which required the care of a practical nurse. In the doctor's opinion, absent the home and petitioner's services, it would have been necessary to place Mr. Henson in a convalescent hospital where nursing services were available. In his opinion petitioner ably performed the services of a 24-hour practical nurse.

Dr. Kraushaar also testified that petitioner's services following Mr. Henson's retirement and for which she now seeks compensation were substantially the same as the services she rendered in caring for Mr. Henson following the revision of the stump of his amputated leg in 1957. On that occasion Standard denied liability for petitioner's services and Mr. Henson petitioned the former Industrial Accident Commission for a supplemental award. Following a contested hearing the referee awarded the sum of $1,344.70 for nursing services rendered by petitioner for the period April 2, 1957, to July 22, 1957. Dr. Kraushaar was of the opinion that Mr. Henson's general physical condition following retirement was substantially the same as his condition immediately following the revision of the stump of his leg and that he required the same practical nursing care petitioner provided on the former occasion.

There was evidence that Mr. Henson had difficulty with bladder and bowel control and that because of his restricted mobility he was frequently unable to get to the bathroom on time even while he was still at work prior to retirement. Dr. Kraushaar testified that the condition persisted after retirement and gradually worsened because of "deterioration of the general mental attitude" and age.

Dr. Kraushaar attributed Mr. Henson's ulcer condition to irritation of the digestive track from extended use of medication for pain. In the doctor's

opinion Mr. Henson's heart condition was triggered or aggravated by the industrial injury and prolonged pain and anxiety which ensued.

Standard's expert, Dr. Winsor, was of the opinion that the heart condition and hypertension were not related to the industrial injury. Based upon a review of the medical and autopsy records, Dr. Winsor was of the opinion that decedent was suffering from a kidney disease and that it produced high blood pressure and arteriosclerosis which in turn caused the fatal heart attack.

In denying petitioner's claim for personal services, the board concluded that she merely performed nonreimbursable wifely duties. In denying reimbursement for doctor bills incurred in treating Mr. Henson for his heart condition, the board relied upon the opinion of Dr. Winsor that the disease was not industrially related. Petitioner urges, in effect, (1) that the uncontroverted evidence established as a matter of law her right to compensation for her personal services and (2) that there was no substantial medical evidence to support the board's finding that the decedent's cardiovascular condition was not industrially caused. We have concluded that the board's decision denying recovery for personal services is not supported by substantial evidence but that its decision with respect to the doctor bills incurred for treatment of decedent's heart condition must be sustained.

## I

Preliminarily, we review certain basic principles by which we must be guided in reviewing the board's decision concerning the claim for personal services.

■ An employer has the affirmative statutory duty to provide "[m]edical, surgical, and hospital treatment, *including nursing* . . . which is reasonably required to cure or relieve from the effects of the injury. . . ." (Italics supplied.) (Lab. Code, § 4600.) The statute must be liberally interpreted in favor of the employee's right to reimbursement and the employer should not, without good cause, be relieved of the duty to furnish medical care and treatment. (*McCoy* v. *Industrial Acc. Com.,* 64 Cal.2d 82, 86 [48 Cal.Rptr. 858, 410 P.2d 362]; *Cal. Union Ins. Co.* v. *Industrial Acc. Com.,* 183 Cal.App.2d 644, 648 [7 Cal.Rptr. 67]; *Simien* v. *Industrial Acc. Com.,* 138 Cal.App.2d 397, 400 [291 P.2d 951].) ■ Nursing services include services of a practical nurse and the fact that the services were rendered by a family member of the injured employee does not relieve the employer of its statutory obligation to pay for them. (*Cal. Cas. Indem. Exch.* v. *Ind. Acc. Com.,* 84 Cal.App.2d 417, 422-423 [190 P.2d 990].) ■ If practical nursing care is "reasonably required to cure or relieve from the effects of the injury" (Lab. Code, § 4600) and

such care has been adequately provided by a wife, she should be entitled to be compensated for her services. (2 Larson, Workmen's Compensation Law (1970) § 61.13, pp. 88.253-88.254.)

In some jurisdictions wives have been denied recovery on the theory that spouses have a legal duty imposed by the marital relationship to care for each other without expectation of monetary remuneration. (E.g., *Bituminous Casualty Corporation* v. *Wilbanks,* 60 Ga.App. 620 [4 S.E.2d 916]; see discussions in *Cal. Cas. Indem. Exch.* v. *Ind. Acc. Com., supra,* 84 Cal.App.2d 417; and in *A. G. Crunkleton Electric Co.* v. *Barkdoll,* 227 Md. 364 [177 A.2d 252].) However, as the former Industrial Accident Commission has so aptly stated: " '[A]n employer or insurance carrier . . . is not a third party beneficiary to a marriage contract and is without right to assume or contend that the spouse of an injured employee . . . is under any obligation to exert added physical efforts to attend to the injured spouse's needs which otherwise would be the responsibility of the employer to furnish.

" '. . . the fact that the injured employee is married may lead to an expectation that love and affection may be of therapeutic value in restoring the injured employee's motivation for speedy recovery, but such attitude is personal to the spouse and not a matter which [an employer or insurance carrier] may expand to impose upon the injured employee's spouse a responsibility for care and attendance. The affirmative obligation for providing care and treatment is on the employer [or insurance carrier].' " (*American Bridge Division, U. S. Steel Corp.* v. *Ind. Acc. Com.,* 30 Cal. Comp. Cases 159, 160-161.)

In its decision on reconsideration, the board, after reviewing the evidence, refers to Hanna's discussion of the circumstances under which a family member may be compensated for practical nursing service. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 16.01[6], subd. [b], pp. 16-12, 16-13.) The board quotes Hanna's statement: " 'As a general rule family members are not entitled to be compensated for gratuitous services performed at home for an injured employee without the knowledge of the employer or insurance carrier when such services are of a minor custodial nature,' " and notes Hanna's observation that " '[i]t is the quality and extent of the services that is decisive.' " The board then quotes further: " 'Factors relevant in determining whether the services were of such quality to warrant compensation include (1) whether the services were arranged for or approved by a physician, and (2) whether the faimily [*sic*] member was qualified as a nurse or was performing the functions of a nurse. As a test for whether the extent of the services was sufficient for compensability, the cases customarily

mention whether or not the family member has to relinquish or forego employment or was under a heavy burden because of the services. Most reported cases that denied recovery has [*sic*] been cases in which the family member was untrained and did not have to forego employment.' "

The board then proceeds to reject petitioner's claim for personal services for the following reasons: (1) There were "no requests or indication by Dr. Kraushaar that nursing care was indicated"; (2) the services were of a "custodial or attendant nature" required by Mr. Henson's "age and infirmity rather than by his industrial condition"; (3) petitioner did not forego or relinquish outside employment to care for her husband; (4) petitioner made no request for compensation until after the services had been rendered. Based upon the foregoing considerations, the board concluded that petitioner "did not render personal services as a practical nurse to decedent . . . for which she is entitled to reimbursement."

There is no substantial evidence to support the existence of some of the factors on which the board predicated its decision and other factors on which the board relied, though supported by the evidence, do not justify the conclusion reached.

■ Any award or decision of the board must be supported by substantial evidence in the light of the entire record. (*Le Vesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635-637 [83 Cal.Rptr. 208, 463 P.2d 432].) "[T]he test of substantiality must be measured on the basis of the entire record, rather than by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence." (*Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].) Our Supreme Court has rejected previous decisions which have suggested that the board's decision must be sustained if supported by "any evidence whatsoever" or "any substantial evidence." (*Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 317; *Le Vesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 638-639.)

■ The board's finding that there was no evidence that Dr. Kraushaar ever indicated that nursing service was required is not supported by the evidence. While Dr. Kraushaar did not order practical nursing services, he knew that such services were required and that petitioner was adequately providing them. He testified that Mr. Henson was unable to use crutches because of the pain in his shoulder and that he required assistance in doing many of the things necessary to care for himself such as putting on his artificial leg, getting in and out of bed, going to and from the bathroom, and in and out of the bathtub. Dr. Kraushaar further testified

that petitioner rendered the services of a 24-hour practical nurse and that in the absence of the home and petitioner, it would have been necessary to place Mr. Henson in a convalescent hospital where nursing services were available.

The finding that the nature of the services performed by petitioner were merely of a "custodial or attendant nature" required by Mr. Henson's age and infirmity rather than by reason of the industrial injury is not supported by substantial evidence. Petitioner's claim cannot be dismissed simply by characterizing her services as being of a "custodial or attendant nature." "It is the quality and extent of the services that is decisive." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 16.01[6], subd. [b], p. 16-13.) In addition to Dr. Kraushaar's opinion that petitioner rendered the services of a full-time practical nurse, the record contains abundant uncontradicted testimony from petitioner showing that the nature and extent of her services were in fact those of a 24-hour practical nurse. Nor in the light of the entire record is there substantial evidence to support the board's finding that the services for which petitioner seeks to be compensated were those required by reason of Mr. Henson's age and generally deteriorating health rather than by reason of the industrial injury. Mr. Henson was unable to care for himself because of the amputation of his right leg and the continuing pain he suffered as a result of the industrial injury. In ordering Standard to pay for the cost of the massive quantities of drugs and medication consumed by Mr. Henson for relief of pain, the board impliedly found that the severe and persistent pain was industrially related. While there was evidence that Mr. Henson was incontinent and that petitioner often had to clean up after him, the added duties stemmed primarily from Mr. Henson's inability to get to the bathroom on time because of his restricted mobility. The board's finding that the services were required by reason of Mr. Henson's age and generally deteriorating health rather than to relieve him from the consequences of the disabling injury does not withstand the substantiality test. The overwhelming and uncontradicted evidence was that petitioner's services were reasonably required to relieve Mr. Henson from the effects of the industrial injury.

The board stressed the fact that petitioner did not forego or relinquish outside employment to care for decedent. That factor may be of controlling significance where the question of compensability is closely balanced. In such cases, the fact that the wife may have foregone outside employment may tip the scales in favor of compensability. But the presence of that factor is not essential to recovery. (2 Larson, Workmen's Compensation Law, *supra,* § 61.13, pp. 88.253-88.254.) As Larson notes (2 Larson,

*op. cit. supra,* p. 88.254) the point was considered in *Oolite Rock Company* v. *Deese* (Fla. 1961) 134 So.2d 241, where the employee was physically and mentally totally disabled and required constant attention. The court held that while a wife's relinquishment of outside employment "to care for a disabled husband may be a relevant factor, it does not determine the matter, and that under the circumstances of this case the petitioners [employer and its carrier] were bound to pay the claimant's wife for the extraordinary services she was performing. The petitioners [employer and its carrier] were fully aware of the injured workman's needs and of the almost constant attention demanded by him during his waking hours." The court concluded that in such an extreme case the application of a rule that the wife could not be compensated simply because she did not happen to have been employed at the time of the husband's misfortune "would be so harsh as to be downright unjust." (134 So.2d at p. 243.)

In the instant case petitioner did not relinquish or forego outside employment to care for Mr. Henson. That fact, however, was irrelevant. Here, as in *Oolite, supra,* as a result of the unfortunate industrial accident the employee was virtually totally disabled and required constant care and attention. Standard, through its agent Dr. Kraushaar, knew that practical nursing services were required and that petitioner was providing them. While a wife's relinquishment of outside employment may be a relevant factor in determining whether the employee actually required the services provided or whether the services rendered were in the nature of practical nursing services, once it is established that nursing services were necessary and that they were provided by the wife, to deny recovery on the mere happenstance that the wife was not employed when she started caring for her husband would be manifestly unjust. It would permit the employer to escape its statutory obligation on a fortuitous irrelevant circumstance.

Nor is the fact that petitioner made no demand for payment until after the services were rendered decisive. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 1601[6], subd. [b], pp. 16-12, 16-13.) This is not a case where a family member rendered minor custodial services without the knowledge of the employer and later seeks to be compensated therefor. In such circumstances rejection of the claim would have been proper. (See *Cal. Cas. Indem. Exch.* v. *Ind. Acc. Com., supra,* 84 Cal.App.2d 417, 422.) But here Standard, through its agent Dr. Kraushaar, knew that full-time practical nursing services were required and that petitioner was properly and adequately providing them. The delay in filing the claim does not justify its rejection on the ground the services were intended to be gratuitous. Petitioner testified she wrote to Standard stating she could no longer continue to care for Mr. Henson without help

and that Standard's response was they were sorry but they could only provide medication. When Mr. Henson underwent a revision of the stump of his amputated leg in 1957, petitioner, through her husband, demanded compensation for her services in caring for him and pursued the claim by an application for a supplemental award. The services rendered by petitioner on that occasion were substantially the same as the services she rendered after Mr. Henson's retirement. Petitioner testified she discussed with Mr. Henson about filing the instant claim for her services but that he told her not to do so during his lifetime because he was physically unable to "fight them again" and that she should pursue the matter after he was gone. In the foregoing circumstances failure to demand payment until after the services were rendered does not justify rejection of the claim on the ground the services were rendered without expectation of compensation. (See *Cal. Cas. Indem. Exch.* v. *Ind. Acc. Com., supra,* 84 Cal.App.2d 417, 422-423; *American Bridge Division, U. S. Steel Corp.* v. *Ind. Acc. Com., supra,* 30 Cal. Comp. Cases 159.) In the case of an employer's "neglect or refusal seasonably" to provide medical care "including nursing," the employer is liable "for the reasonable expense incurred by or on behalf of the employee in providing treatment." (Lab. Code, § 4600.) Here the employer not only had notice that nursing care was required but was requested to provide such assistance. Standard thus neglected to provide treatment within the meaning of section 4600 and is liable for the services provided by petitioner. (Cf. *McCoy* v. *Industrial Acc. Com., supra,* 64 Cal.2d 82, 87; *White* v. *Workmen's Comp. App. Bd.,* 270 Cal.App.2d 447, 450-452 [75 Cal.Rptr. 809].)

We conclude that the board's decision that petitioner did not render practical nursing services during the period from her husband's retirement is not supported by substantial evidence. By reason of Mr. Henson's restricted mobility, the constant severe pains he suffered, and the drastic personality changes wrought by the injuries, he required constant care and attention. The practical nursing duties required to relieve Mr. Henson from the effects of his industrial injuries virtually confined petitioner to her house ever since Mr. Henson's retirement. Petitioner's devotion to her husband no doubt enabled her to endure the years of hardships but Standard cannot escape its statutory obligation by saying she merely performed "wifely duties." By focusing upon factors which are not of controlling significance under the facts of the present case, the board lost sight of the underlying affirmative statutory duty of the employer to provide nursing care to cure or relieve an employee from the effects of an industrial injury. The employer should not be relieved of that duty without good cause. (*McCoy* v. *Industrial Acc. Com., supra,* 64 Cal.2d 82, 86.) No good cause was shown in the instant case.

## II

Turning to the claim for doctor bills incurred for treatment of Mr. Henson's heart condition, the board denied the claim on the basis of Dr. Winsor's opinion that the heart disease was not industrially related.

Petitioner attacks the board's finding on the theory that Dr. Winsor based his opinion solely upon medical records and failed to take into consideration the prolonged pain, stress and anxiety suffered by Mr. Henson. However, in his report Dr. Winsor stated in part: "I do not believe that there is any relationship between this man's industrial injury and his subsequent hypertension and coronary artery disease. Anxiety can produce an elevation in the blood pressure but this is an intermittent elevation, but anxiety cannot cause the disease hypertension." ■ The board is empowered to annul the referee's finding and substitute its own finding and decision in light of the evidence and in so doing may choose among conflicting competent medical opinions the one which it deems most persuasive. (*Jones* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 476, 479 [67 Cal.Rptr. 544, 439 P.2d 648]; *Baker* v. *Workmen's Comp. App. Bd.*, 18 Cal.App.3d 852, 858 [96 Cal.Rptr. 279].) Dr. Winsor's competence in the field of cardiovascular disease is unquestioned; he is a specialist in internal medicine and cardiovascular disease. The board's decision to base its findings on his opinion may not be disturbed.

The board's decision on reconsideration is annulled insofar as it denies petitioner's claim for compensation for personal services rendered in caring for her husband from the date of his retirement until his death and the matter is remanded to the board with directions to enter an award for that item in accordance with the referee's findings and award.

Gardner, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied September 19, 1972, and the petitions of Henson and respondent Standard Oil Company for a hearing by the Supreme Court were denied October 18, 1972.