[No. B082647. Second Dist., Div. Four. Apr. 18, 1995.]

DEPARTMENT OF THE CALIFORNIA HIGHWAY PATROL,
Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, SUSAN R.
BENSON, as Executor, etc., et al., Respondents.

COUNSEL

Krimen, Klein, Da Silva, Daneri & Bloom and Don E. Clark for Petitioner.

Parker & Irwin, Joan E. Partritz and Donald W. Hitzeman for Respondents.

## OPINION

HASTINGS, J.—In a workers' compensation proceeding, the workers' compensation judge (WCJ) ruled that dependency, pursuant to Labor Code sections 3501 and 3502, could be determined as of "the date of last industrial exposure," rather than "the date of injury" set forth in Labor Code section 5412. This ruling meant that dependency status could be determined so as to entitle adult, nondependent children of a deceased worker to a death benefit primarily provided by Labor Code section 4701 for dependent spouse, dependent children and disabled dependent adults. The ruling was upheld by the Workers' Compensation Appeals Board (Board).

This court issued a writ of review. We have concluded that the WCJ and the Board erred, and remand for further proceedings consistent with the views expressed in this opinion.

### FACTUAL AND PROCEDURAL HISTORY

The deceased employee was Ray Sills, born June 11, 1929. He had been employed for 25 years as a traffic officer, from September 1954, until his retirement on September 9, 1979, by defendant Department of the California Highway Patrol, insured by the State Compensation Insurance Fund (SCIF).

There is no evidence that decedent Sills was symptomatic while employed by defendant, or ever lost any time from work. However, on January 3, 1986, more than six years after retirement, decedent Sills filed an application for workers' compensation benefits, alleging that he had sustained a cumulative injury to his cardiovascular system due to industrially related stress.[1] Defendant raised the affirmative defense of the statute of limitations.

On February 4, 1986, decedent Sills was examined by internist Martin S. Goldfarb, M.D. Dr. Goldfarb reported that "[f]or a period of two [or] three years prior to 1984 [Sills] was aware that he would break out in a sweat and become dizzy. He would also have to 'lay down to keep from passing out.'" These episodes became more frequent as time passed, and in 1984 Sills consulted cardiologist and internist, Naresh K. Pruthi, M.D. Dr. Pruthi diagnosed hypertension and a mitral valve prolapse, and prescribed medication. Dr. Goldfarb also diagnosed these conditions in 1986, as well as idiopathic hypertrophic subaortic stenosis. Dr. Goldfarb expressed the opinion that Sills's employment with the highway patrol had been very stressful and had aggravated and accelerated Sills's heart conditions.

---

[1] This claim will sometimes be referred to as the inter vivos claim.

While Sills's application for benefits was pending, Sills suffered from congestive heart failure, was hospitalized and underwent cardiac surgery on February 24, 1986, to replace the prolapsed valve and to bypass a coronary artery. Unfortunately, Sills suffered extensive brain damage after surgery and was comatose until the end of April 1986. There was slight improvement, and home care was then provided by licensed vocational nurses and by his fiancée, Kathryn Compton. Ms. Compton, who was working away from the household during the day, took over from the nurses at night for 12 hours, providing complete care for decedent Sills. Sills was hospitalized again in February 1988 and died on March 6, 1988, from cardiac arrest as the consequence of idiopathic cardiomyopathy.

On March 8, 1988, Sills's adult daughter, Susan R. Benson, filed a claim for death benefits pursuant to Labor Code section 4701, alleging that Sills had left as dependents a putative spouse, Kathryn Compton, and his son, David Ray Sills.[2] Proceedings were held at the Board concerning Sills's workers' compensation claim; benefits accrued pursuant to that claim survived his death. (Lab. Code, § 4700.)

The Board returned the matter to the WCJ on one occasion for further proceedings. Ultimately, the injury to Sills's cardiovascular system was found to be industrial and not barred by the statute of limitations. The WCJ issued findings on October 19, 1988, which were rescinded and then reinstated on January 4, 1991. Defendant's petition for reconsideration was denied by the Board on April 2, 1991.[3]

Hearing on the claim for death benefits was held on June 17, 1993. Sills left three adult children from his first marriage to Betty Sills: Susan, born

---

[2]Labor Code section 4701 provides: "When an injury causes death, either with or without disability, the employer shall be liable, in addition to any other benefits provided by this division, for all of the following: [¶] (a) Reasonable expenses of the employee's burial, not exceeding two thousand dollars ($2,000) and for injuries occurring on and after January 1, 1991, not exceeding five thousand dollars ($5,000). [¶] (b) A death benefit, to be allowed to the dependents when the employee leaves any person dependent upon him or her for support."

Labor Code section 4702 sets forth dollar amounts for various dependency situations. In the case before us, the amount involved was $95,000.

*Labor Code section 3502 provides that the status of any particular person as a dependent "shall be determined in accordance with the facts as they exist at the time of the injury of the employee."* (Italics added.)

[3]Another issue litigated by the parties was whether Sills's injury had manifested during the 60-month period following the end of employment, because the presumption of industrial injury to highway patrol officers such as Sills who suffer from heart trouble, set forth in Labor Code section 3212.5, is only available to them during that period. The WCJ, upheld by the Board, determined that for the purposes of Labor Code section 3212.5, Sills's injury had manifested at some point during the five-year period after September 1, 1979.

January 25, 1956; Carol, born December 28, 1957; and David, born July 20, 1962. Sills had married Marta Sills in approximately 1976 and was divorced from her on January 5, 1985. Marta Sills had two children, Michael Rossi, born September 23, 1963, and Elisa Rossi, born March 18, 1967, who had lived with decedent and Marta during their marriage.

All of these claimants hired counsel who contended that Sills's dependents should be determined as of the last day of his employment in 1979. Operating on the assumption that this contention would prevail, they entered into "Stipulations" concerning how the $95,000 death benefit and other benefits accruing to decedent should be allocated. It was agreed that $62,000 would go to David Sills, who was a 17-year-old minor at the time decedent Sills retired from his employment in 1979. Smaller amounts were allocated to David's older sisters, Susan and Carol, and to Marta, Michael and Elisa Rossi.

The WCJ issued supplemental findings and an award, finding that the injury had occurred "during the period beginning in 1954 through 9-9-79" and that decedent had been totally temporarily disabled from September 11, 1983, through February 4, 1986; that Sills had become 100 percent permanently disabled thereafter until his death on March 6, 1988; that David Sills was totally dependent on decedent as of September 9, 1979; and that "there is liability in a reasonable amount for the services of Kathryn Compton." The WCJ then awarded the death benefit pursuant to the agreement of the claimants.

Defendant petitioned for reconsideration, contending that the WCJ had erred in finding "the date of injury" to be from 1954 to September 9, 1979, rather than "the date of injury" as defined by Labor Code section 5412 for cumulative injuries.[4] Defendant argued that the dependency status of the death benefit claimants was erroneously determined as of September 9, 1979, "the date of last industrial exposure," noting that Labor Code section 3502 provides that it is determined at "the time of injury." Defendant also charged further error in the computation of temporary disability benefits and the award of compensation to Kathryn Compton for her nursing services.

In his report to the Board, the WCJ conceded he had erred in his award of temporary disability, but recommended denial of reconsideration on the other issues raised. With respect to the issue of the appropriate time for

---

[4]That section provides that "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

determining the dependency status of the Sills-Rossi claimants, he reasoned that Labor Code section 5412's definition of the "date of injury" in cumulative injury cases was for statute of limitations purposes only; was found in chapter 2, part 4 of division 4; and was not applicable to death benefit cases. He concluded that dependency in death cases arising from either specific or cumulative injuries was to be determined at "the time of injury" as provided by Labor Code section 3502, and that "the time of injury" could be different from "the date of injury" generally employed in cumulative injury cases. He also declared that his finding that the period of injury was from 1954 to 1979 had been upheld by the Board when it denied reconsideration in April 1991, and was res judicata. On February 3, 1994, the Board remanded on the temporary disability benefits issue but upheld the WCJ on the remainder of his findings and award.

Defendant then sought review in this court, contending that in an effort to ensure compensation to the deceased worker's next of kin, the WCJ had engaged in legal contortions and had "used one date of injury, at least no earlier than January 3, 1985, to find the decedent's inter vivos claim was timely; used another date of injury, September 9, 1979, to find one presumed total and several partial dependents; and then awarded death benefits based on statutory amounts written for injuries on and after January 1, 1983. Such a schizophrenic approach to death benefits finds no support, either in law or in common sense." Defendant also relied on the reluctance of the California Supreme Court, as recently expressed in *Massey* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 674 [20 Cal.Rptr.2d 825, 854 P.2d 117], to provide death benefits for deceased workers' children who had attained majority when the parent died. The Sills-Rossi claimants argued here that defendant's argument was with the Legislature, as the Labor Code permits the WCJ to define "time of injury" differently than "date of injury." The claimants relied on the Board opinion in *Ashman* v. *Workers' Comp. Appeals Bd.* (1987) 52 Cal.Comp.Cases 392, writ denied. They also argue that petitioner failed to challenge the amount of the death benefit in its petition for reconsideration and has thereby waived the issue.[5]

## DISCUSSION

"When the death of an employee is proximately caused by an injury arising out of and in the course of employment, the employer is liable to the

---

[5]We reject this argument. It is clear that petitioner, in its petition for reconsideration, was challenging the date upon which eligibility for a death benefit is determined. It argued that the WCJ was wrong by choosing the 1979 date, making David Sills eligible for the dependency award. By challenging David Sills's eligibility for the dependency award, petitioner was necessarily challenging the amount of the award.

employee's dependents for a death benefit. [(Lab. Code, § 4701, subd. (b).)] The death benefit is payable in addition to any other benefits provided for under the Workers' Compensation Law, such as accrued and unpaid disability compensation." (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1994) Death Benefits in General, § 9.01[1], at p. 9-4, fns. omitted.)

Dependency may be total or partial, and dependents may be a spouse, or "in good faith a member of the family or household of the employee," or be specifically described relatives by law or by blood. (Lab. Code, § 3503.) If there is no dependent eligible for the death benefit, a death benefit is payable by the employer to the Department of Industrial Relations. (Lab. Code, § 4706.5.)

■ It is well established that dependency status for death benefit purposes is determined by the facts existing *at the time of injury, rather than death.* (Lab. Code, § 3502; *Massey* v. *Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at p. 677; *Granell* v. *Industrial Acc. Com.* (1944) 25 Cal.2d 209, 212 [153 P.2d 358].) The "time of injury" is easily determined when a worker has sustained the injury as the result of a specific incident, but it is harder to discern when the worker has sustained a cumulative injury, one which gradually manifests itself by producing disability in the injured worker, and then death. That was the situation in the case before us.

The WCJ chose the last date of decedent Sills's employment, when one of his children was still a dependent minor, as the "time of injury," without citing any authority for the choice, and we have found none. He rejected the "date of injury" applicable to cumulative injuries for statute of limitation purposes, because the basic statute of limitation governing most workers' compensation claims makes reference to claims based on provisions in part 2, articles 2 and 3, while death benefits are set forth in part 2, article 4, of the Labor Code. In the case before us, the WCJ's choice of the early date of 1979 led to an award supported by reasoning inconsistent with the decisional law concerning cumulative injuries, particularly that involving the statute of limitations, which employs "the date of injury," and inconsistent with the inter vivos findings and award in the same litigation.

We review the law regarding cumulative injuries, much of which has evolved from statute of limitations issues. Labor Code section 5405 provides, in pertinent part, that "[t]he period within which may be commenced proceedings for the collection of the benefits provided by Articles 2 or 3, or both, of Chapter 2 of Part 2 of this division is *one year from:* [¶] *(a) The date of injury;* or . . . ." (Italics added.)

Labor Code section 3208.1 provides that "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. *The date of a cumulative injury shall be the date determined under Section 5412.*" (Italics added.)

Labor Code section 5412 provides that the "date of injury" is "[the] date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." It has been held that "where an employee suffers from a cumulative injury or occupational disease, there is a 'date of injury' only at such time as the employee suffers an impairment of bodily functions which results in the impairment of earnings capacity." (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 336 [200 Cal.Rptr. 219].)

There is recent precedent for applying "date of injury" analysis in death benefit cases, despite the reluctance of the WCJ to do so, although the provisions for them are set forth in part 2, article 4 of the Labor Code, rather than article 2 or 3. In *Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1267 [268 Cal.Rptr. 699], the Court of Appeal held that two separate and distinct occupational diseases, resulting from a single period of exposure but manifesting at different times, could be governed by different "dates of injury"—*as long as both dates were consistent with the definition of "date of injury" contained in Labor Code section 5412*—for the purpose of calculating death benefits payable under Labor Code section 4702.

Applying "date of injury" analysis as generally employed by statute and case law to cumulative injuries, the record before us contains no evidence that decedent was ever disabled or even symptomatic during the course of his employment. The medical reporting suggests that decedent Sills may have suffered an impairment of bodily function as early as 1983, but there is no evidence that he knew or reasonably should have known that his impairment was industrially related. Defendant had the burden of proof on the statute of limitations issue in the inter vivos claim, and apparently never offered any evidence on the point. (Defendant also made no effort to seek judicial review of the Board's determination that decedent had filed the claim in timely fashion.) However, since decedent filed his claim on January 3, 1986, and the Board determined that the claim was not barred by the one-year statute of limitations, the "date of injury" must have been between January 3, 1985, and January 3, 1986, rather than 1979.

There is another consideration involved in determining the date of injury in this case. In *Massey* v. *Workers' Comp. Appeals Bd.*, *supra*, the California Supreme Court was considering Labor Code section 5406, which provides that no proceeding by a dependent to collect death benefits "may be commenced more than one year after the date of death, *nor more than 240 weeks from the date of injury.*" (Italics added.) The *Massey* court stated that the 240-week period "appears to reflect a legislative judgment that allowing a longer interval between injury and death would create unacceptable difficulties in proving industrial causation, as evidence grows stale and the possibilities of intervening causes increase." (5 Cal.4th at p. 681.) The *Massey* court held that the 240-week period provided by Labor Code section 5406 was a condition precedent to entitlement to death benefits, and was not tolled by the minority of dependents claiming death benefits. In the instant case, to meet the requirement that a death benefit could only be awarded if no more than 240 weeks (slightly more than 4½ years) had elapsed between injury and death, since the WCJ and the Board allowed a death benefit, the "date of injury" *could not have been earlier than late 1983 or 1984 without running afoul of the condition precedent acknowledged in Massey.*

Given the logical absurdity and internal inconsistency in the result reached here, we are not persuaded that the WCJ had carte blanche to choose whatever date seemed correct to him in determining the "time of injury" pursuant to Labor Code section 3502. The "time of injury" set forth in section 3502 and "the date of injury" in Labor Code section 5412 are indistinguishable. With the objective of encouraging consistency in application of the workers' compensation laws, we hold that in cumulative injury cases, both phrases have the meaning set forth in section 5412, irrespective of where death benefit provisions are located in the Labor Code. We are mindful of the observation in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], that "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole."

The Sills-Rossi claimants rely on *Ashman* v. *Workers' Comp. Appeals Bd.*, *supra*, 52 Cal.Comp.Cases 392, a Board decision, and a writ-denied case, wherein a widow who married the decedent worker *after his injury* but before his death was denied a death benefit. *Ashman* is distinguishable on its facts from the present case because the earlier date during the decedent's employment chosen by the Board was one upon which the decedent, unlike decedent Sills, experienced compensable disability. In another earlier case, *Granell* v. *Industrial Acc. Com.*, *supra*, a widow who had married the

decedent worker after his specific injury but before his death was denied a death benefit pursuant to Labor Code section 3502. (See also *Smart* v. *Workers' Comp. Appeals Bd.* (1985) 50 Cal.Comp.Cases 540, writ den.) None of these cases dealt with the specific problem raised by the case before us, which turns on what is meant by "time of injury" in a cumulative injury death case.

■ We also reject the contention that the Board's denial of reconsideration on the inter vivos claim in 1991 constituted an affirmation of the WCJ's choice of the period from 1954 to 1979 as the period of injury in the death case. It was, at best, a description of the period of injurious exposure, but for either statute of limitations purposes or other situations, a more precise ruling would be required to apply the doctrine of res judicata.

Upon remand, further proceedings may be necessary to determine the "time of injury" in the case before us, guided by the definition set forth in Labor Code section 5412 for the "date of injury." When the "time of injury" has been determined, the status of various individuals claiming dependency can be determined.

We note that defendant (petitioner) has made no argument in the petition concerning the correctness of the award of compensation for nursing services to Kathryn Compton. We deem that issue to have been abandoned by defendant in this court. The Board properly upheld the award, pursuant to *Henson* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 452 [103 Cal.Rptr. 785], as part of medical treatment for an injured worker.

### DISPOSITION

The Board's order of February 3, 1994, amending the supplemental findings and award reissued December 1, 1993, is annulled, except for subdivision (d), which provides for "Reimbursement for practical nursing services in a reasonable amount payable to Kathryn Compton." The Workers' Compensation Appeals Board is to conduct further proceedings consistent with the views expressed in this opinion.

Woods (A. M.), P. J., and Epstein, J., concurred.