WILLIAM G. PAULSON, APPELLANT, V. GLENN L. MARTIN-NEBRASKA COMPANY, A CORPORATION, APPELLEE.

26 N. W. 2d 11

FILED JANUARY 31, 1947. No. 32158.

*Lester L. Dunn,* for appellant.

*Albert S. Johnston,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEA-GER, CHAPPELL, and WENKE, JJ., and ANKENY, District Judge.

MESSMORE, J.

This is a compensation case. The plaintiff was employed by the defendant as a carpenter and at the time of the accident was 64 years of age. On February 9, 1945, while working on a scaffold about ten feet in height it collapsed, causing him to fall to the floor, landing on his feet and suffering an injury to his right foot. Following the injury, his leg was placed in a cast for approximately two months, and upon the removal of the cast he walked on crutches until about November 20, 1945, and thereafter has used a cane. He has not returned to work since the day of the injury, complains of intense pain and his inability to sleep on account of pain, and asserts he is unable to stand on his right foot, and unable to perform his occupation as a carpenter. The record discloses that the plaintiff has been a carpenter foreman and an independent construction contractor.

A hearing was had before one of the judges of the Nebraska Workmen's Compensation Court on April 12, 1946, and an award made granting the plaintiff compensation for 20 percent partial permanent disability of his right foot. The award also granted compensation for temporary total disability from February 9, 1945, to December 31, 1945. The partial permanent disability was for a period of 30 weeks from and after December 31, 1945. It is acknowledged that the temporary total disability compensation payments have been made. On appeal to the district court the court affirmed the findings and award of the compensation judge.

The issue presented by this appeal is the contention of the plaintiff that he sustained permanent total disability from the injury received on February 9, 1945, while engaged in his usual occupation as a carpenter for the defendant, and that he will continue to be totally and permanently disabled unless the condition is corrected by surgery.

Dr. D. J. O'Brien, called as a witness for the plaintiff, testified that he was engaged in the general practice of medicine and had specialized in orthopedic surgery for a period of 11 months while a member of the armed forces. He identified the exhibits, which are X-rays, and made an examination of the plaintiff. The examination revealed a fracture of the right os calcis and also an almost complete flattening of Bohlers angle, which produced an anatomical distortion of the foot. It was this doctor's opinion that there was a flattening of the os calcis in its longitudinal diameter, and the Bohlers angle, which varies from 27 to 33 degrees normally, was practically obliterated; that the obliteration of the Bohlers angle would cause a flattening and elongation of the foot, weakening of the foot, and pain, for the reason that the plaintiff did not have the proper weight-bearing surface; that the plaintiff was permanently and totally disabled due to the fracture of the os calcis, the destruction of the Bohlers angle, and the pain resulting from these injuries, and that the total permanent disability would continue indefinitely unless corrected by surgery; that it would be necessary for the plaintiff to submit to surgery to rid him of his pain, and that a fusion operation solidifying the foot so that there would be no motion in the foot on weight bearing, which causes the pain, was the corrective measure.

The plaintiff was recalled and testified that he would submit to such an operation.

Dr. W. R. Hamsa, physician and specialist in orthopedic surgery called on behalf of the defendant, testified that the subastragalar motion was 50 percent of normal, extremes being painful, and the metatarsal joint was 75 percent of normal, with the extremes being painful; that the heel was thicker by half an inch, and the depression below the outer

ankle bone was entirely obliterated; that there was tenderness present over the posterior superior, or outer portion of the heel. He explained the subastragalar joint as the joint between the ankle bone and the heel bone, and it allows only an up and down motion. It is the joint that adjusts to rough surfaces. The metatarsal joint is the joint between the front and back of the foot so that it can accommodate the differences in surfaces between the front and back. He evaluated the permanent partial disability of the right foot at 20 percent.

While there is some testimony by Dr. Hamsa that the plaintiff was totally and permanently disabled, it is based on the doctor's belief that plaintiff would not be able to carry on his occupation as a carpenter, taking into consideration ladder climbing, walking along a platform, or on narrow places. He further testified that the injury to the foot would not disturb the functions of the body otherwise, and that the ordinary use of the foot should not cause pain. He testified that in his opinion the plaintiff was probably through as a carpenter, because of the disability to his.foot, and his age.

Dr. J. Dewey Bisgard, the attending surgeon, testified that the technique in taking X-rays affected somewhat the appearance of the Bohlers angle. He found the same limitations of motion in the foot as Dr. Hamsa, and estimated partial permanent disability in the right foot of the plaintiff at 20 percent.

While Dr. O'Brien recommended surgery, he recognized that due to the plaintiff's age, he was not an ideal patient. However, he had a painful condition and the doctor believed the operation should be tried, and if it failed, the alternative would be to remove the foot; that the percentage of the success of the operation should be in favor of the plaintiff. Other factors he mentioned were that the plaintiff would be in a cast for three or four months, that his blood supply is not as good as that of a young man, and that there could be softening of the bones from disuse. He testified that he believed this condition could be prevented

to some extent by the administration of calcium and vitamins. His main objective, with reference to recommending the operation, was to give the plaintiff something to bear his weight on that was not painful.

Dr. Hamsa, with reference to the surgery, testified that there was some hardening of the arteries consistent with a man the plaintiff's age. The effect of the hardening of the arteries upon the foot would be less elasticity of the blood vessels and a greater risk would be encountered in surgical reconstruction of the foot due to this condition, but beyond that, the arteries would not restrict the motion of the foot nor interfere in any other manner. He agreed with Dr. O'Brien that surgery was the best suggestion, but hesitated to do it on account of the hardening of the arteries. He further testified: "I would not recommend surgery on a sixty-five year, old man with that kind of a foot. That des not mean he might not take it satisfactorily, but he would be a greater risk than a younger individual. That is a common operation in younger individuals."

Dr. Bisgard testified that he felt that what is called an astragalar arthrodesis, or fusion operation, was not indicated because the plaintiff showed so little involvement of the joint surface and no evidence of arthritic change in the joint, and on account of his age, the doctor believed that his disability was to some extent, or possibly to a large extent, on a mental-attitude basis.

It is noted that the plaintiff contends that he is totally and permanently disabled from performing his occupation as a carpenter, that is, he is claiming an industrial disability. It is clear that there is no evidence of any other injury to his body except the injury to his right foot.

Where an employee receives an injury to his foot, not affecting any other part of his person, an award of compensation for said injury shall be made in accordance with the provisions of subdivision 3, section 48-121, R. S. 1943. Subdivision 3 provides in part: "For disability resulting from permanent injury of the following classes, the compensation shall be in addition to the amount paid for tem-

porary disability; *Provided, however,* the compensation for temporary disability shall cease as soon as the extent of the permanent disability is ascertained, * * *. For the loss of a foot, sixty-six and two-thirds per cent of daily wages during one hundred and fifty weeks. * * * In all cases involving a permanent partial loss of the use or function of any of the members mentioned in subdivision (3) of this section, the compensation shall bear such relation to the amounts named in said subdivision (3) as the disabilities bear to those produced by the injuries named therein. * * *."

In Bronson v. City of Fremont, 143 Neb. 281, 9 N. W. 2d 218, we held: "In a claim for compensation arising under subdivision 3 of section 48-121, Comp. St. 1929 (now R. S. 1943), it is immaterial whether an industrial disability is present or not." Further in the same case this court said: "It was clearly the intent of the legislature in establishing a schedule of benefits for the specific injuries listed in subdivision 3 to fix the amount of such benefits without regard to the extent of the subsequent disability with respect to the particular work or industry in which the employee was engaged at the time of his injury. Carlson v. Condon-Kiewit Co., 135 Neb. 587, 283 N. W. 220." Consequently, the compensation for permanent partial loss of the use and function of the plaintiff's right foot cannot exceed the amount specified in subdivision 3. See Hull v. United States Fidelity & Guaranty Co., 102 Neb. 246, 166 N. W. 628. In such case it is immaterial whether an industrial disability is present or not. See Schmidt v. City of Lincoln, 137 Neb. 546, 290 N. W. 250.

While the plaintiff makes reference to the necessity of surgical interference to decrease the disability of his right foot, he does not directly argue this point in his brief. Doctors Hamsa and Bisgard, who testified for the defendant, were of the opinion that the operation was not indicated. The doctor who testified for the plaintiff believed the operation would be beneficial, but admitted the possibility of the failure of the operation which might require the removal of the plaintiff's foot. Obviously the trial court found that

the medical testimony was not sufficient upon which to base an award authorizing an operation.

The plaintiff did not cite nor make reference to section 48-120, R. S. 1943, which provides in substance that the employer shall be liable for reasonable medical and hospital services and medicines as and when needed, and that in case of injury requiring dismemberment, or injuries involving major surgical operation, the employee may designate to his employer, the physician or surgeon to perform the operation. In this connection the rule is: "Where the evidence discloses that further medical, hospital and surgical services would not definitely improve the condition of an injured employee, and where such improvement would be conjectural, the employer's liability, under section 48-120, Comp. St. 1929 (now R. S. 1943), to furnish reasonable medical and hospital services and medicines, as and when needed, ceases." Wilson v. Brown-McDonald Co. 134 Neb. 211, 278 N. W. 254.

The record in this case does not show that there would be a definite improvement in the plaintiff's condition if the operation be performed, and such improvement would be conjectural.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.