GORDON SHOTWELL, APPELLANT AND CROSS-APPELLEE, V. INDUSTRIAL BUILDERS, INC., ET AL., APPELLEES AND CROSS-APELLANTS.

190 N. W. 2d 624

Filed October 8, 1971. No. 37935.

Wright, Simmons, Hancock & Hall, for appellant.

Atkins, Ferguson & Nichols and L. M. Hahn, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

This is an action instituted before the Nebraska Workmen's Compensation Court. On hearing before the full compensation court, plaintiff received an award based upon temporary total disability for 149 4/7 weeks, 47½ percent permanent partial disability for 150 2/7 weeks, and 17½ percent permanent partial disability for the rest of his life based upon a two-member disability. The award was affirmed upon appeal to the district court. We affirm the award subject to modification as herein specified.

The accident occurred on March 7, 1966, while plaintiff was employed as a surveyor's rodman by defendant, receiving $94.05 per week. There is no dispute with reference to the employment, the accident, or the nature of the injuries received. Plaintiff was 18 years of age, had recently been graduated from high school, and had taken a short course in welding. He had no fixed occupation, but occasionally painted automobiles. He worked for defendant as a rodman, common laborer, heavy equipment operator, steel tier, and welder.

His injuries consisted of a fractured right ulna at the elbow, multiple fractures of the right foot, a compression fracture of the fifth lumbar vertebra, possible fractures of the first and second lumbar vertebrae, and a fractured right wrist. He gradually lost the hearing in one ear; was subjected to occasional but persistent headaches; and had persistent low back pain, a left foot drop, numbness and atrophy of the left leg, clawing of the toes of the left foot, a deformed right foot with a bony protuberance, difficulty urinating, bowel troubles, curvature of the spine, restriction of back motion and weakness in back, a 10 degree restriction of movement in the right wrist, nervousness, and shakiness. Physical impairment was estimated at 10 percent for the right

foot, 20 to 25 percent for the left leg, and 35 percent for the body as a whole. The conditions mentioned still prevailed more than 4 years after the accident and estimates of physical impairment were based upon plaintiff's condition at that time.

It is undisputed that plaintiff's condition will deteriorate with the passage of time. As one medical expert put it, he will need the services of an orthopedist and urologist for the rest of his life. It is entirely possible that he may become totally disabled. If so, he may seek relief under section 48-141, R. R. S. 1943. We cannot at this time agree with plaintiff's contention that is presently totally disabled. After recuperating from his injuries, he was unable to find employment in his home area and moved to Portland, Oregon. There he found employment doing electric wiring but was transferred to a painting job as he could not endure the bending over required in the electrical work. Due to adverse effects from paint fumes, he can no longer act as a painter. His employer went out of business and he obtained another job as a welder which did not require bending over. He was still so employed at the time of trial. Due to his physical handicaps, he was paid 50 cents to $1 an hour less than others doing the same work. He also works part-time selling tickets at a nightclub, a position which permits him to sit. It is apparent that due to his youth and determination, he has in some measure rehabilitated himself, but the fact remains that his employability has been severely restricted. He can no longer do heavy common labor, operate heavy equipment, act as a rodman, do types of labor requiring walking, lifting, or bending. In other than a tight labor market, he, as a handicapped worker, will find it difficult to secure employment should he lose his present position.

Losses in bodily function are important only insofar as they relate to earning capacity and the loss thereof. See Nordahl v. Erickson, 174 Neb. 204, 116 N. W. 2d 275.

It is evident that plaintiff still retains a measure of earning capacity and cannot at this time be classified as one totally and permanently disabled. On the other hand, the extent of his bodily impairment is not necessarily synonymous with or determinative of his employability and earning capacity. Disability is defined in terms of employability and earning capacity rather than in terms of loss of bodily function. See Nordahl v. Erickson, *supra*. The record supports the finding that plaintiff sustained a two-member disability amounting to a 25 percent impairment of the left leg and a 10 percent impairment of the right foot. The lower courts averaged this out and concluded that plaintiff had a permanent partial disability of 17½ percent, entitling him to $7.41 per week, after the first 300 weeks, during his life. It was found that physical impairment and disability in the sense of loss of employability and earning capacity were the same. With this we agree. As previously pointed out, the types of employment for which plaintiff was originally fitted have been greatly restricted by his injury and present physical condition.

Under subdivision (2) of section 48-121, R. S. Supp., 1965, plaintiff was allowed the sum of $29.78 each week for 150 2/7 weeks for a 47½ percent permanent partial disability to the body as a whole. It is evident that in considering this feature of the case, the trial court failed to take into consideration several of the bodily ailments suffered by plaintiff. We find that this partial disability amounted to 65 percent and that plaintiff should receive the sum of $40.74 each week for the 150 2/7 week period.

Section 48-120, R. R. S. 1943, provides: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, * * * subject to the approval of the compensation court, * * *." The undisputed evidence indicates plaintiff will require medicines, and medical and hospital services in the future as a result of his injuries. If and when such

items are required, they shall, subject to approval by the compensation court, be supplied at defendants' expense. See Gilmore v. State, 146 Neb. 647, 20 N. W. 2d 918.

Subject to the foregoing modifications, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.

SPENCER, J., dissenting.

I respectfully dissent. I cannot be a party to a decision which penalizes determination and extreme effort to be self-supporting despite the physical infirmities set out in the majority opinion, which to me constitute permanent disability. In the present day and age, most employees sustaining the plaintiff's disabilities would not attempt to do any type of work and would clearly be found totally disabled.

We have repeatedly held that total disability does not mean a state of absolute helplessness but rather it means the disablement of the employee to earn wages in the same kind of or similar work for which he was trained.

At the time of his injury plaintiff, a partial paraplegic, had worked at and was able to perform a specialty called pin striping; to do heavy common labor; to tie steel as a steel worker; work as a carpenter's helper; to operate heavy equipment; to act as a rodman; and to do any type of labor requiring walking, lifting, or bending. As the majority opinion states, he can no longer do any of these tasks. Since his injury he has tried electrical wiring and painting but is physically unable to perform the tasks that work requires. At the time of the trial he was employed as a spot welder of switch breaker boxes, but due to his physical handicaps was paid less than others doing the same work. He is unable to do lifting of any nature, and is only able to weld work brought to him. While he cannot perform several of the tasks required in his job, probably because of his intense desire to be a useful citizen his present employer has worked out these problems for him, but

most employers would consider him unemployable.

Plaintiff retains a measure of earning capacity solely because of his determination to overcome extreme disabilities. Clearly, plaintiff has sustained a loss of earning capacity equivalent to or greater than that sustained by the claimant in Haler v. Gering Bean Co., 163 Neb. 748, 81 N. W. 2d 152; Nordahl v. Erickson, 174 Neb. 204, 116 N. W. 2d 275; Mead v. Missouri Valley Grain, Inc., 178 Neb. 553, 134 N. W. 2d 243; and Brockhaus v. L. E. Ball Construction Co., 180 Neb. 737, 145 N. W. 2d 341, where we found permanent total disability. For all intents and purposes he is totally disabled. The majority opinion certainly thwarts the beneficent purposes of the Nebraska Workmen's Compensation Act by a highly technical refinement of interpretation.

WHITE, C. J., and McCOWN, J., join in this dissent.