VIOLET M. SPIKER, CONSERVATOR OF THE ESTATE OF
HAROLD SPIKER, INCOMPETENT, APPELLEE AND
CROSS-APPELLANT, V. JOHN DAY CO., A CORPORATION,
ET AL., APPELLANTS AND CROSS-APPELLEES.

270 N. W. 2d 300

Filed September 22, 1978.   No. 41776.

Knudsen, Berkheimer, Endacott & Beam, for appellants.

Law Offices of Kenneth Cobb, P.C., and Kenneth Cobb, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding under the Workmen's Compensation Act. The plaintiff, Harold A. Spiker, was employed by the defendant, John Day Co. as a salesman. On August 11, 1971, the plaintiff was severely injured in an automobile accident which arose out of and in the course of his employment.

Following the accident the defendant and its insurance carrier paid compensation to the plaintiff for total disability and paid the plaintiff's medical and hospital expenses through March 3, 1972. This action was commenced on September 28, 1976, to recover medical and hospital expenses which the plaintiff incurred after March 3, 1972. The plaintiff's wife, who was appointed as conservator for the plaintiff on March 21, 1977, has been substituted as plaintiff. However, for convenience, the injured workman will be referred to as the plaintiff.

At the hearing before a single judge of the compensation court the plaintiff recovered an award for total disability, the award to continue for so long as the plaintiff remained totally disabled. The court found that the plaintiff suffered from chronic focal

organic brain syndrome with behavioral disorder due to cerebral trauma sustained at the time of the accident. Although the plaintiff's condition had stabilized, it was probable that he would require institutional care with adequate nursing care and medical management for the rest of his life. The defendants were ordered to reimburse the plaintiff, the Veterans' Administration, and Medicare for expenses in the amount of $53,432.47 and were ordered to pay for such future medical, institutional, and hospital care as was reasonably necessary. The defendants refused to accept the findings and award and requested a rehearing before the compensation court.

Upon rehearing, the compensation court found that the plaintiff was totally and permanently disabled as a result of the accident; that none of the plaintiff's hospital confinements on or after March 3, 1972, were required for the treatment of any condition or disease caused or aggravated by the accident; that there was no substantial connection between the accident and subsequent urinary tract infections, bladder tumor, enlarged prostate, respiratory infections, or hemiplegia; and that all expenses attributable to the treatment of those conditions and diseases were not compensable.

The compensation court further found, one judge dissenting, that the plaintiff required continual custodial or nursing home care as a result of the brain injury, irrespective of other conditions or diseases, and that such care will be required for the rest of the plaintiff's life. The court awarded the plaintiff an amount equivalent to the cost of custodial care in a nursing home for the time in which he had been cared for at home. The court also ordered the defendants to reimburse the Veterans' Administration in the amount of $18,909.40, and Medicare in the amount of $2,812.80, for hospital, medical, surgical, and nursing home services which had been furnished

to the plaintiff. The defendants have appealed and the plaintiff has cross-appealed from the award on rehearing.

The principal question presented by the appeal is whether an injured workman who is totally and permanently disabled and requires nursing care as the result of an accident and injury which arose out of and in the course of his employment is entitled to recover for the cost of such care although it will not cure or lessen his disability.

The issue here is not one of fact but is a question of law. There is no dispute concerning the plaintiff's right to compensation or his need for nursing care for the remainder of his life. In construing the act it is important to remember that the Workmen's Compensation Act should be liberally construed so as to accomplish the beneficent purposes of the act. Marlow v. Maple Manor Apartments, 193 Neb. 654, 228 N. W. 2d 303. The policy of the act should not be thwarted by technical refinements of interpretation.

At the time of the accident on August 11, 1971, section 48-120, R. R. S. 1943, provided in part as follows: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, and in addition to devices necessary for treatment, the first prosthetic devices, subject to the approval of the compensation court, not to exceed the regular charge made for such service in similar cases * * *.

"The court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished or to be furnished * * *."

In Newberry v. Youngs, 163 Neb. 397, 80 N. W. 2d 165, this court said: "The burden placed upon the employer by section 48-120, R. R. S. 1943, is designed to *relieve or cure* the physical injuries suffered by the employee." (Emphasis supplied.)

Although there is some conflict in authority, most of the cases which have considered the question hold

that an employer is liable for medical, surgical, and hospital services required by an injured workman even though his disability is total and permanent and there is no hope of a cure. See, 2 Larson, The Law of Workmen's Compensation, § 61.14, p. 10-474; 10 Schneider's Workmen's Compensation (Perm. Ed.), § 2016, p. 137.

In W. J. Newman Co. v. Industrial Commission, 353 Ill. 190, 187 N. E. 137, the employee was paralyzed from the hips down as a result of a fractured spine. His disability was total and permanent and could not be reduced by any further treatment. His condition required constant nursing care. The Illinois Supreme Court held that the care which he required was necessary to relieve him from the effects of the injury and that the employer's liability continued so long as medical, surgical, and hospital services were required in order to relieve the injured employee from the effects of his injury.

In Castle v. City of Stillwater, 235 Minn. 502, 51 N. W. 2d 370, the employee had sustained injury to the cervical spine which resulted in permanent total disability. The Supreme Court of Minnesota held that the employer was required to provide physiotherapy, massage, and heat treatments because such treatments were necessary to relieve the employee from the effects of the injury even though such treatments could not effect a cure or reduce the disability of the employee.

In Howard v. Harwood's Restaurant Co., 40 N. J. Super. 564, 123 A. 2d 815, the employee was totally and permanently disabled as a result of an assault by a deranged fellow employee. The injured employee required care in a nursing home, or at home with nurses, and medical supervision to prevent complications such as pneumonia, kidney and skin infections, and to take care of her bowels, bladder, and nutrition. The New Jersey court held that the employer was liable for such services under a stat-

ute requiring "medical, surgical and other treatment, and hospital service as shall be necessary to *cure and relieve* the workman of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible" even though the employee could not be cured by such treatment, and would never be able to get out of bed or be able to take care of herself. (Emphasis supplied.)

In Stephens v. Crane Trucking, Inc. (Mo.), 446 S. W. 2d 772, the employee was totally and permanently disabled as a result of injuries suffered in a truck accident. The Supreme Court of Missouri held that the employee was entitled to nursing care under a statute authorizing medical, surgical, and hospital treatment, including nursing where required "to cure and relieve from the effects of the injury." The court said: "In Brollier v. Van Alstine, 236 Mo. App. 1233, 163 S. W. 2d 109, the insurer contended that the statutory terms 'cure' and 'relieve' were used in the conjunctive and that if the employee could not be 'cured' of his injuries the commission lacked power to order the insurer to furnish treatment to 'relieve' him. The court held: ' * * * such a position is untenable. The two words do not have identical meaning and the Legislature must have intended that both words should be given effect, else it would not have used both. * * * The words as used in the statute must be given their usual and well recognized meaning, and the statute must be liberally construed. Claimant * * * may be "relieved," that is, given comfort, succor, aid, help, and ease, in his suffering; but he cannot be "cured" or "restored to soundness" after his injury.' 163 S. W. 2d 1. c. 115 [7, 8]. So it is with Mr. Stephens—he is entitled to nursing services which 'relieve him in his otherwise helpless bedfast condition even though there is no further course of 'medical' treatment in anticipation of a 'cure' or restoration to soundness." See, also,

Di Giorgio Fruit Corp. v. Pittman (Fla.), 49 So. 2d 600; Loomis v. Travelers Ins. Co. (La. App.), 169 So. 2d 544; Orrick Stone Co. v. Jeffries (Okla.), 488 P. 2d 1243.

The defendants rely upon Wilson v. Brown-McDonald Co., 134 Neb. 211, 278 N. W. 254; Paulsen v. Martin-Nebraska Co., 147 Neb. 1012, 26 N. W. 2d 11; Peek v. Ayres Auto Supply, 155 Neb. 233, 51 N. W. 2d 387; and Halbert v. United States F. & G. Co., 185 Neb. 775, 178 N. W. 2d 781, in which cases it was stated that the employer's liability under section 48-120 to furnish reasonable medical and hospital services and medicines, as and when needed, ceases when further medical, hospital, and surgical services would not definitely improve the condition of the injured employee and improvement would be conjectural. None of these cases involved an employee who had suffered a brain injury which produced total permanent disability. The issues involved in those cases was whether the workman was entitled to recover the expense of further surgical procedure where it was conjectural whether such procedure would be of any benefit to the workman. In the Halbert case the workman was allowed to recover the expense of surgery to his left foot even though the operation had been of questionable value, proved to be unsuccessful, and actually increased his disability. In the Peek case the employee had sustained a brain injury but this court determined "no necessity for further surgical or psychiatric treatment was shown." None of these cases are controlling or applicable here.

In Gilmore v. State, 146 Neb. 647, 20 N. W. 2d 918, the employee was totally and permanently disabled as the result of an accident on April 7, 1936, in which he fell from the rear of a truck and injured his spine. The injury resulted in total permanent disability on March 31, 1941. In a proceeding commenced August 25, 1941, the employee recovered an award for total

disability and medical, surgical, and hospital care. No appeal was taken from this award by the employer. The employee was paid compensation for total disability until his death on September 27, 1944. The employer refused to pay for medical and hospital care for the employee after November 15, 1942. An application for additional benefits filed on July 24, 1944, resulted in an award for the medical and hospital expenses incurred by the employee from November 15, 1942, until his death, which award was affirmed by the District Court and this court. We held that the medical and hospital expense incurred by the employee "from and after the accident and resulting injuries until his death, were necessary and directly connected with the accident of April 7, 1936," and were compensable.

In Shotwell v. Industrial Builders, Inc., 187 Neb. 320, 190 N. W. 2d 624, the employee had suffered multiple injuries to his right arm, both feet, left leg, and spine with resulting bowel and urinary difficulties as a result of his injuries. He was determined to be permanently partially disabled as a result of the accident and the probability was recognized that he would become totally disabled. Three judges of this court were of the opinion he was then totally and permanently disabled. It was undisputed that his condition would deteriorate with the passage of time and there was evidence he would need the services of an orthopedist and urologist for the rest of his life. He was awarded compensation by this court for temporary total disability for 149 4/7 weeks; 65 percent permanent partial disability for 150 2/7 weeks; and 17 1/2 percent permanent partial disability for the two-member injury for the rest of his life. With respect to his right to future medical expenses under section 48-120, R. R. S. 1943, we said: "Section 48-120, R. R. S. 1943, provides: 'The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, * * * subject to

the approval of the compensation court, * * *.' The undisputed evidence indicates plaintiff will require medicines, and medical and hospital services in the future as a result of his injuries. If and when such items are required, they shall, subject to approval by the compensation court, be supplied at defendants' expense. See Gilmore v. State, 146 Neb. 647, 20 N. W. 2d 918.''

The employee's right to future medical expenses in the Shotwell case was not in any way dependent upon some hope of a "cure" or a reduction in disability. The employee had then reached his maximum recovery and it was apparent his condition would worsen in the future rather than improve. Nevertheless, he was awarded future medical and hospital services and medicines as and when needed to be supplied at the expense of the employer.

The evidence in this case establishes that the plaintiff requires nursing care on a permanent basis as a direct result of the brain injury sustained in the accident on August 11, 1971. The plaintiff is entitled to recover the cost of such care under section 48-120, R. R. S. 1943.

The defendants further contend the trial court erred in awarding the plaintiff an amount equivalent to the cost of custodial care in a nursing home as a substitute for reimbursement for home care, and in ordering the defendants to reimburse the Veterans' Administration and Medicare for services furnished to the plaintiff.

Neither the Veterans' Administration nor Medicare, nor any agency concerned with that program, were parties to the action. There was no evidence that the plaintiff had incurred any liability for services furnished by the Veterans' Administration or Medicare. It is clear that the plaintiff had no claim for reimbursement for services furnished by the Veterans' Administration and Medicare and the compensation court had no jurisdiction to determine

any right of reimbursement that either the Veterans' Administration or Medicare might have as against the defendants. That portion of the award ordering the defendants to reimburse the Veterans' Administration and Medicare was erroneous and is reversed.

In Claus v. DeVere, 120 Neb. 812, 235 N. W. 450, this court held that an injured workman could not recover for his wife's services as a nurse which were furnished to him while he was cared for at home. There is much authority to the contrary in other jurisdictions and a majority of this court is now of the opinion that the decision in Claus v. DeVere, *supra,* should be overruled for the reasons stated in the concurring opinion of Brodkey, J. The plaintiff is entitled to an award for the reasonable value of the nursing care furnished to him by Mrs. Spiker while he was cared for at home together with the reasonable expense of the nurses and aides who were employed to assist Mrs. Spiker in caring for the plaintiff during the time that he was at home. This does not include the cost of additions to the plaintiff's home.

The cross-appeal contends the compensation court erred (1) in finding the hospital confinements after March 3, 1972, were not directly related to the accident; (2) in finding there was no causal connection between the accident and the plaintiff's urinary tract infections, enlarged prostate, respiratory infections, and hemiplegia; (3) in failing to compensate the plaintiff's wife for home nursing care; (4) in failing to award a portion of the cost of adding a room to the plaintiff's home to enable him to be cared for at his home; (5) in failing to award the Veterans' Administration the fair and reasonable value of the hospital care furnished to the plaintiff; and (6) in failing to award the statutory penalty and attorney's fees as provided in section 48-125, R. R. S. 1943.

The fourth and fifth contentions of the cross-appeal

are without merit for reasons which have been stated before.

The evidence shows that following the accident on August 11, 1971, the plaintiff was hospitalized at Bryan Memorial Hospital. He was discharged from the hospital on October 12, 1971, and readmitted on November 1, 1971. He was transferred to Madonna Professional Care Center on January 6, 1972. He was readmitted to the hospital on January 14, 1972, and transferred to the Veterans' Administration Hospital on March 3, 1972. Since March 3, 1972, he has been in a Veterans' Administration Hospital, Eastmont Manor, the Americana Nursing Home, Bethesda Hospital, Lincoln General Hospital, or Milder Manor Nursing Home except for 171 days when he was cared for at his home.

On January 26, 1972, Dr. John D. Baldwin, a psychiatrist who had been assisting with the treatment of the plaintiff, wrote to the plaintiff's wife and attorney concerning the future care and treatment of the plaintiff. Dr. Baldwin stated that although the plaintiff's condition had now stabilized, it was probable that he would require institutional care for the rest of his life in a long-term psychiatric facility with adequate nursing personnel and medical management. Dr. Baldwin emphasized that the plaintiff's condition might deteriorate as he became aged and that he would need continual medical management and medications.

On February 18, 1972, the defendant insurance carrier wrote to the plaintiff's lawyer stating that further medical payments for the plaintiff would be terminated after March 3, 1972. Apparently, March 3, 1972, was an arbitrary date selected by the insurance carrier and the termination was actually based upon Dr. Baldwin's letter of January 26, 1972.

When the plaintiff was first hospitalized following the accident, one of the injuries for which he was treated was blood in his urine. The treatment for

this condition necessitated the insertion of a catheter which was left in place for several weeks. Thereafter, the plaintiff had a series of urinary difficulties including incontinence, infections of the urinary tract, strictures, and retention. Various procedures were performed including cystoscopy and transurethral resection.

In the course of treatment it was discovered that the plaintiff had a small bladder tumor and enlargement of the prostate. The tumor was not related to the accident in any way. The enlargement of the prostate was not related to the accident except that it combined with his injuries to complicate his urinary problems and the procedures undertaken to correct that condition were done in an effort to relieve the incontinency and infections which were related to the brain injury sustained in the accident.

Since the accident the plaintiff has been treated by Dr. Donald Purvis, a specialist in internal medicine; Dr. Bruce McMullen, a specialist in internal medicine; Dr. John Baldwin, a psychiatrist; Dr. Louis Gilbert, a urologist; Dr. Guy Matson, a physician; Dr. David J. Gogela, a specialist in neurosurgery; Dr. Carlos Mota, a surgeon and urologist; Dr. Julia Hopkins, a specialist in internal medicine; Dr. Douglass Decker, a neurologist; and Dr. George Hachiya, a psychiatrist. All these physicians were called as witnesses by the plaintiff and testified in his behalf. Their testimony established that the injury to the plaintiff's brain produced a general debilitating effect and resulted in his bowel and urinary difficulties.

The testimony of the treating physicians established that the urinary infections were directly related to the brain injury. The only evidence to the contrary was the testimony of Dr. Harold Ladwig, a neurologist, who had not examined or treated the plaintiff and whose testimony was based entirely upon an examination of records.

The evidence is nearly conclusive that the urinary tract infections were the result of the brain injury and the treatments utilized in attempting to control the urinary problems which the plaintiff had as a result of his injury. The finding of the compensation court that there was no causal connection between the urinary tract infections and the injury was clearly wrong and is reversed.

In addition to his urinary and bowel problems the plaintiff sustained a cerebral vascular accident on April 25, 1975, resulting in hemiplegia. The plaintiff has had several severe respiratory infections. Although the plaintiff's brain injury may have been a contributing cause to these difficulties, the evidence is such that we can not say that the compensation court was clearly wrong in finding to the contrary.

There was a reasonable controversy between the parties in this case and the plaintiff was not entitled to the statutory penalties for waiting time. § 48-125, R. R. S. 1943; Marshall v. Columbus Steel Supply, 187 Neb. 102, 187 N. W. 2d 607. Since it does not appear that the award to the plaintiff was increased in this court, no allowance is made for the services of the plaintiff's attorneys in this court.

The judgment of the compensation court is affirmed in part, and in part reversed, and the cause remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR FURTHER PROCEEDINGS.

BRODKEY, J., concurring.

I feel the time has come for this court to reconsider and overrule our previous pronouncement in Claus v. DeVere, 120 Neb. 812, 235 N. W. 450 (1931), in which this court announced the rule that an injured workman cannot recover for his wife's services as a nurse which were furnished to him while he was cared for at home.

The accident in question occurred on August 11, 1971. The defendant and the insurance company refused to make any further payments to the claimant after March 3, 1972, on the basis that plaintiff's condition would not be further improved, and might even deteriorate. The applicable statute in effect at that time provided that: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, and in addition to devices necessary for treatment, the first prosthetic devices, subject to the approval of the compensation court, not to exceed the regular charge made for such service in similar cases * * *. The court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished or to be furnished and shall have authority to order a change of doctor, physician, hospital, or rehabilitation facility when it deems such change is desirable or necessary." See section 48-120, R. R. S. 1943, in effect at that time. We point out that the above section was amended, effective August 24, 1975, and the principal change in the language is italicized as follows: "The employer shall be liable for all reasonable medical and hospital services, appliances, supplies, prosthetic devices and medicines as and when needed, *which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment,* subject to the approval of and regulation by the compensation court, * * *." Laws 1975, L.B. 127, § 1, p. 264. However, even under the wording of the original statute, this court held in Newberry v. Youngs, 163 Neb. 397, 80 N. W. 2d 165 (1956): "The burden placed upon the employer by section 48-120, R. R. S. 1943, is designed to *relieve or cure* the physical injuries suffered by the employee." (Emphasis supplied.) There is little question that under either the original statute or the subsequent amendment, nursing services, as such, are covered

as "reasonable medical services." In some of the jurisdictions hereinafter referred to, the statutes specifically provide for liability for "nursing services," but we do not believe the result would be any different even though not specifically mentioned in the particular statute involved. The principal problem involved in this case, as well as one frequently encountered in other jurisdictions, is whether recovery for nursing services are recoverable when rendered by the claimant's spouse or other members of his or her immediate family. See, 2 Larson, The Law of Workmen's Compensation, § 61.13, pp. 10-469 to 10-472; 10 Schneider's Workmen's Compensation (Perm. Ed.), § 2004(m), p. 34 et. seq., and Supplements thereto; 99 C. J. S., Workmen's Compensation, § 268, pp. 918, 919. The problem is well delineated and discussed by the court in A. G. Crunkelton Electric Co., Inc. v. Barkdoll, 227 Md. 364, 177 A. 2d 252 (1962), where the court states: "Appellants' next contention is that the appellee's wife is not entitled to receive compensation for nursing services performed for her husband. This raises a question novel in this State. Ordinarily nursing services, when necessary and authorized, are part of any workmen's compensation law, and the injured employee, when it is required, is entitled to nursing services at home or in a hospital. There is no dispute on this point. However, when a member of the employee's immediate family (wife) as here, is involved, a conflict of judicial opinion arises.

"The cases which deny such allowances (compensation to the wife) do so on the grounds that the services rendered constitute a duty imposed by the marital relationship and for which the husband would not be liable in suit for quantum meruit, nor can the wife recover in a suit against a third party. Other cases have held, in the absence of a showing that the wife had given up other employment to care for her husband, that such a claim would not be allowed.

For cases denying the allowance to a wife, see Claus v. DeVere (Neb.), 235 N. W. 450; Graf v. Montgomery Ward (Minn.), 49 N. W. 2d 797; and Galway v. Doody Steel Erecting Co. (Conn.), 130 Atl. 705.

"However, other states have adopted the so-called 'modern rule' as enunciated by Professor Larson, and have permitted such payments to a wife on the grounds that when the wife was employable she was entitled to compensation for caring for her husband, or, that the services required were of an extraordinary nature and not those contemplated by the usual marital relationship and, therefore, she would be entitled to be recompensed for the same. California Casualty Ind. Exch. v. Industrial Acc. Com'n (Cal.), 190 P. 2d 990; Daugherty v. City of Monett (Mo.), 192 S. W. 2d 51; and Berkowitz v. Highmount Hotel, 120 N. Y. S. 2d 600. See also 2 Larson, Workmen's Compensation Law, § 61.13."

Inasmuch as the decision in many of the opinions hereinafter cited appear to turn on the peculiar facts of the individual cases, it will be helpful at this point to set out the type of services rendered by Mrs. Spiker to her husband during the course of his illness. The insurer informed the plaintiff's attorney on February 18, 1972, that all medical payments for the plaintiff would terminate on March 3, 1972. After that date, Mrs. Spiker cared for her husband at their home for a total of 171 days, during which time she attended her husband singlehandedly for a total of 3,371 hours. During the night it was necessary for her to get up at least once an hour to turn her husband, change the bedding when he had a bowel movement, give him medication when his bladder spasms commenced, insert catheters when necessary, and generally take care of him in the evenings and on weekends, when the employed nurse was absent. Her stated reason for the extensive care she rendered him was for the purpose of reducing the cost of such care. It is clear that the

type of services rendered by Mrs. Spiker to her husband were not those of an ordinary housewife, but were of an extraordinary nature and the type usually rendered by professional nurses.

In-depth research of authorities from other jurisdictions, as well as our own, reveals that there are three basic requirements to be satisfied before compensation will be allowed for the care given an injured employee by the spouse in their home. These requirements are that: (1) The employer must have knowledge of the employee's disability and need of assistance as a result of a work-related accident; (2) the care given by the wife must be extraordinary and beyond normal household duties; and, finally (3) there must be a means of determining the reasonable value of the services rendered by the spouse. These considerations presuppose that nursing care in the employee's home is allowable under the statute. As set out in the majority opinion, Nebraska would allow recovery for such care in the home.

Both Michigan and Massachusetts have considered statutes similar to Nebraska's section 48-120, R. R. S. 1943, and have held that nursing care rendered at home by the wife would be included in the term "medical services." Dunaj v. Harry Becker Co., 52 Mich. App. 354, 217 N. W. 2d 397 (1974); In re Klapac, 355 Mass. 46, 242 N. E. 2d 862 (1968). The Michigan Court of Appeals in Dunaj v. Harry Becker Co., *supra*, discussed the question of "whether medical services rendered by claimant's wife are unpaid *medical services* within the meaning of the statute," (in effect at the time of the accident) and held "that medical service by a claimant's wife are compensable to the same extent as they would be if the services had been rendered by someone other than the wife." (Emphasis supplied.) The court concluded by stating "we do not believe that the Legislature intended that an employee and its insurer should re-

ceive a windfall by reason of the fact that claimant's wife has performed services which should have been provided by said employer."

The Massachusetts Supreme Court in In re Klapac, *supra,* stated: "The term 'medical services' as used in the statute is inclusive of the services of a nurse * * *." The court stated that: "The wife was not barred from receiving payments for nursing services because of the marital relationship * * *. It is beside the point that no debt may have arisen between husband and wife * * *. The employer through the insurer, if insured, has the affirmative duty to furnish to an injured employee 'adequate and reasonable medical and hospital services, and medicines if needed, * * *.' G. L. c. 152, § 30. If services that fall within the statutory provisions are furnished by the wife, they should be paid for. The statutory obligation is not expressed in terms of reimbursing the employee for amounts he became obligated to pay." The court in In re Klapac, *supra,* did not allow compensation for the wife's care as she was not supervised by a physician.

Many other jurisdictions, with statutes specifically providing nursing care, have allowed the spouse' claim for services. In Daugherty v. City of Monett, 238 Mo. App. 924, 192 S. W. 2d 51, the appellate court found that "the wife rendered excellent services and it was certainly in addition to her ordinary household duties." The court also distinguished Claus v. DeVere, *supra,* because the wife in the Daugherty case was not being compensated for the "ordinary household services of a wife but extraordinary services in addition to her ordinary duties." See, also, Groce v. J. E. Pyle, 315 S. W. 2d 482 (Mo. App., 1958).

The Missouri Court of Appeals spoke again on the issue of compensating a spouse for home care in Collins v. Reed-Harlin Grocery Co., 230 S. W. 2d 880 (Mo. App., 1950). The court found that the employer knew of the employee's injuries and his need for as-

sistance. The court concluded that the employer's failure to provide or to offer to provide such services resulted in its liability for the care provided by the wife. See, also, Stephens v. Crane Trucking, Inc., 446 S. W. 2d 772 (Mo., 1969); Balsamo v. Fisher Body Div. - G. M. Corp., 481 S. W. 2d 536 (Mo. App., 1972).

California has also decided that a spouse should be compensated for nursing care provided an injured employee at their home in the case of California Cas. Indem. Exch. v. Industrial Accident Commission, 84 Cal. App. 2d 417, 190 P. 2d 990 (1948). The California statute, section 4600 of the Labor Code provided that "nursing" should be provided an injured employee by the employer. See, also, Pacific Elec. Ry. Co. v. Industrial Accident Commission, 96 Cal. App. 2d 651, 216 P. 2d 135 (1950), where a practical nurse was hired in order to reduce medical expenses. The Court of Appeals allowed the employee full compensation although the nurse performed general housework in addition to providing nursing care.

Both Texas and Oklahoma have statutes which require the employer to provide nursing care to an injured employee. Texas, Vernon's Ann. Civ. St., art. 8306, § 7; Oklahoma Statute, 85 O. S. 1961, § 14. Both states have found that a spouse' care of an injured employee is to be compensated under the statutes. Western Alliance Ins. Co. v. Tubbs, 400 S. W. 2d 850 (Tex. Civ. App., 1965); Transport Ins. Co. v. Polk, 400 S. W. 2d 881 (Tex., 1966); Orrick Stone Co. v. Jeffries, 488 P. 2d 1243 (Okla., 1971). The court in Western Alliance Ins. Co. v. Tubbs, *supra*, stated that the wife's services "consisted of feeding, bathing, shaving and turning claimant, taking him to the doctor and generally 'taking care of' him in his home while he was an invalid." In the instant case Mrs. Spiker has rendered very similar care and assistance to her husband.

The Supreme Court of Michigan in Kushay v. Sex-

ton Dairy Co., 394 Mich. 69, 228 N. W. 2d 205 (1975), found that the Michigan statute, M. C. L. A., § 418.315, which provided for "other attendance" of an injured employee, included the care rendered by a spouse. The Michigan Supreme Court stated that: "The language of the statute * * * focuses on the nature of the service provided, not the status or devotion of the provider of the service. * * * If services within the statutory intendment are provided by a spouse, the employer is obligated to pay for them." I believe that Mrs. Spiker in this case provided the same type of nursing care in the nurse' absence, hence, the employee should be compensated for the reasonable value of such services. It is the "nature of the service provided, not the status or devotion of the provider of the service * * *."

Florida has allowed compensation for the wife's services as a practical nurse while caring for her husband, but without discussion or explanation as to the reasons for so doing. Brinson v. Southeastern Utilities Service Co., 72 So. 2d 37 (Fla., 1954); Brown v. Dennis, 114 So. 2d 335 (Fla. App., 1959).

The Florida Supreme Court has also allowed a wife compensation for nursing her husband, although "she did not give up any regular employment." Oolite Rock Co. v. Deese, 134 So. 2d 241 (Fla., 1961). The court there stated that: "The position that the wife could not be compensated in such an extreme case, though the petitioners were escaping the payment to some one else, simply because the wife did not happen to have been employed at the time of the husband's misfortune, is one we cannot accept. We think adoption of the rule would be so harsh as to be downright unjust." See, also, McMahon v. Huntington, 246 So. 2d 743 (Fla., 1971).

Many of the cases which have denied a spouse compensation for the care rendered an injured employee, did so on the ground that the care rendered was *not* so unusual or extraordinary from normal

household duties as to be compensable. Claus v. DeVere, *supra*; Galway v. Doody Steel Erecting Co., 103 Conn. 431, 130 A. 135; South Coast Constr. Co. v. Chizauskas, 172 So. 2d 442 (Fla., 1965); Pan American World Airways, Inc. v. Weaver, 226 So. 2d 801 (Fla., 1969); Bituminous Cas. Corp. v. Wilbanks, *supra*; Graf v. Montgomery Ward Co., 234 Minn. 485, 49 N. W. 2d 797.

The reason given by the Nebraska Supreme Court for its holding in the case of Claus v. DeVere, *supra*, was as follows: "The rule is that the husband is entitled to the services of the wife. He is not liable to her; nor could she sue and recover from him for any service rendered him as a wife * * *."

The care rendered by a spouse is intended for the injured employee's benefit only, not for the employer-insurer's benefit. In this case the employer and insurer refused to provide further care for Mr. Spiker and Mrs. Spiker was forced to care for her husband at their own expense. Mrs. Spiker testified that she was trying to reduce the cost of her husband's care by bringing him home. The employer-insurer should not be allowed to profit from the gratuitous care, given out of love, to an injured employee by his spouse, when it was the employer which *forced* the care of the employee upon the spouse.

I conclude from the foregoing authorities that it would be most inequitable not to permit an injured employee, entitled to workmen's compensation benefits under the applicable statute, to recover the value of services rendered him by his spouse or other members of his family. The obvious injustice is made clear particularly in cases where a wife, prior to the time of the accident, has been gainfully employed and contributing the fruits of her labors to the family income. The same is true in situations where the wife, although not employed at the time, would normally have had the opportunity to obtain

employment and make such contribution. In either event, through no fault of the wife or the injured husband, the family had been deprived of income probably sorely needed to supply their daily requirements. See Oolite Rock Co. v. Deese, *supra*.

As previously noted, there are jurisdictions which do not permit the injured employee compensation for services rendered in the home by the spouse or by other close relatives. However, as stated in 2 Larson, the Law of Workmen's Compensation, § 61.13, p. 10-465, the modern trend of authority is away from that espoused in older cases previously referred to and the equitable view adopted by the more modern cases would appear to be in line with the view I am espousing herein. Most of the cases to the contrary, which I have cited above, may be distinguished on their facts. Other older cases, not cited herein and holding to the contrary, may also be distinguished on other grounds.

I believe the rule announced by this court in Claus v. DeVere, *supra*, in 1931 is outdated, out of step with modern thinking, and highly inequitable in its result, and that this court is correct in overruling that decision. We have in the past stated on many occasions that the Workmen's Compensation Act should be liberally interpreted so as to effectuate the beneficent purposes of the act. Our action today gives substance to that adage.

BOSLAUGH, McCOWN, and WHITE, C. THOMAS, JJ., join in the opinion of BRODKEY, J.

WHITE, C. J., concurring in part, and dissenting in part.

I concur in the majority opinion insofar as it holds:

(1) That the Veterans' Administration and Medicare are not entitled to reimbursement for the reasonable value of medical services provided to plaintiff:

(2) That plaintiff is not entitled to an award for a portion of the cost of adding a room to his home to

enable him to be cared for at home;

(3) That the determination of the Workmen's Compensation Court that the plaintiff's cerebral vascular accident, hemiplegia, and respiratory infections were not a result of his brain injury, is not clearly wrong; and

(4) That plaintiff is not entitled to the statutory penalty and attorney's fees as provided in section 48-125, R. R. S. 1943.

For the following reasons, however, I respectfully dissent from the remainder of the majority opinion.

"The findings of fact made by the Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case." § 48-185, R. S. Supp., 1976. The findings of fact made by the Workmen's Compensation Court after rehearing will not be set aside on appeal unless clearly wrong. Boults v. Church, 200 Neb. 319, 263 N. W. 2d 478 (1978); Hyatt v. Kay Windsor, Inc., 198 Neb. 580, 254 N. W. 2d 92 (1977). The compensation court unanimously and specifically determined that plaintiff's urinary tract infections and bowel difficulties were not the result of his brain injury, but were due to independent and unrelated causes.

Dr. Harold Ladwig examined plaintiff's medical records and gave his opinion that plaintiff's subsequent urinary tract infections were not a result of his brain injury. While plaintiff possibly had a minor urinary tract infection shortly after the accident, the serious reoccurring urinary tract infections he has since suffered from did not commence until August 1972. At that time he underwent surgery on his bladder and prostate. In connection with this a catheter was inserted. Several witnesses acknowledged that an indwelling catheter is a potential source of infection. Dr. Baldwin, who treated plaintiff from October 1971, until March 3, 1972, testified that when he last saw plaintiff he was not suffering from or afflicted with a urinary tract infection.

There is sufficient evidence to sustain the finding of the compensation court, and it cannot be said to be clearly wrong.

It is clear and undisputed from the record that plaintiff reached maximum recovery from his brain injury as of March 3, 1972, and that no further medical treatment, medicine, or surgical procedure would improve, remove, or lessen his injury. The primary question in this case is whether plaintiff is entitled, under the workmen's compensation statutes, as existed on the date of his injury, to an award for noncurative custodial care.

With a single stroke of the pen, the majority opinion concludes that a long series of precedents, by this court, are not "controlling or applicable here." Citing these same decisions, one eminent author in the field of workmen's compensation law concludes that Nebraska is among those jurisdictions which hold that workmen's compensation medical benefits do not extend to "palliative measures useful only to prevent pain and discomfort after all hope of cure is gone." 2 Larson, The Law of Workmen's Compensation, § 61.14, p. 10-474.

In Paulsen v. Martin-Nebraska Co., 147 Neb. 1012, 26 N. W. 2d 11 (1947), the plaintiff suffered an injury to his right foot, and sought an award for an operation to decrease the disability to that foot. The record there failed to show there would be a definite improvement to plaintiff's foot if the operation were performed. Denying plaintiff's claim, we held: "Where the evidence discloses that further medical, hospital and surgical services would not definitely improve the condition of an injured employee, and where such improvement would be conjectural, the employer's liability, under section 48-120, R. R. S. 1943, to furnish reasonable medical and hospital services and medicines, as and when needed, ceases."

In Peek v. Ayres Auto Supply, 155 Neb. 233, 51 N.

W. 2d 387 (1952), plaintiff, a salesman, suffered various injuries as the result of an automobile accident. Among the injuries suffered was a "brain injury with resulting traumatic encephalitis and post-traumatic neurosis." Plaintiff sought an award for further medical services in connection with his injury. In denying his claim, we stated: "At the hearing on December 19, 1950, the plaintiff was admittedly improved and no necessity for further surgical or psychiatric treatment was shown. (Paulsen v. Martin-Nebraska Co., 147 Neb. 1012, 26 N. W. 2d 11 (1947) cited). * * * Therefore, in the light of the evidence and such rules, we conclude that defendant should not be required to furnish plaintiff any future medical and hospital services." See, also, Wilson v. Brown-McDonald Co., 134 Neb. 211, 278 N. W. 254 (1938); Halbert v. United States F. & G. Co., 185 Neb. 775, 178 N. W. 2d 781 (1970). These cases are directly applicable and should be controlling in this case.

Clearly, plaintiff will need custodial care for the rest of his life. In Newberry v. Youngs, 163 Neb. 397, 80 N. W. 2d 165 (1956), plaintiff broke his eyeglasses in the course of an accident. He developed headaches from not wearing them, purchased a new pair, and claimed payment for the eyeglasses. In denying his claim, we stated: "*Need* for eyeglasses *is not the test.* The burden placed upon the employer by section 48-120, R. R. S. 1943, is designed to relieve or cure the physical injuries suffered by the employee." (Emphasis supplied.)

Obviously, plaintiff is in pitiful condition. We cannot, however, permit our sympathy for plaintiff to force us into strained interpretations of our statutes and case law. As was cautioned in Runyan v. Lockwood Graders, Inc., 176 Neb. 676, 127 N. W. 2d 186 (1964): "The result of the instant case appears to be a harsh one. But this court is bound by the statute as enacted. It has no authority to alleviate

the apparent harshness of the result by the application of equitable principles. The plain language of the workmen's compensation law must be followed by this court. The right to and amount of recovery are purely statutory."

"While the conception underlying workmen's compensation is one of insurance, an employer is not an insurer of his employee or his safety, and the acts are not designed to afford life, health, old age, or unemployment insurance." 99 C. J. S., Workmen's Compensation, § 9, p. 54. " * * * the existence and amount of the right to, and corresponding liability for, compensation depend on the provisions of the particular statute." 99 C. J. S., Workmen's Compensation, § 6, at p. 51.

The majority opinion concludes that under section 48-120, R. R. S. 1943, plaintiff is entitled to an award for noncurative custodial care. Section 48-120, R. R. S. 1943, holds the employer liable for "reasonable *medical* and *hospital services* and *medicines* as and when needed and in addition to *devices* necessary for treatment, the first *prosthetic devices.*" (Emphasis supplied.) Under no reasonable construction or interpretation of this statute can it be said that the employer is liable for purely custodial care of the injured employee, which will do nothing to improve his injured condition.

In 1965, the Workmen's Compensation Law was amended by the Legislature to allow the injured employee to recover the cost of a first prosthetic device. Laws 1965, c. 278, § 1, p. 799. The introducer of that act in his Statement of Intent, and later in floor debate explained that: "This bill expands the definition of medical payments under the Workmen's Compensation Statutes. Presently, the statute, as interpreted by the Supreme Court, has meaning that no prosthetic device is covered under medical payments. This means that if a workman is injured on the job in the scope of employment and

otherwise covered by Workmen's Compensation his medical expenses would terminate at the point that he needed a prosthetic device. If he lost a leg or an arm and needed an artificial limb or a glass eye or other similar prosthetic device, the present law does not cover it." Floor Debate, L. B. 278, p. 393 (1965).

The majority opinion holds that the same statutory language, which had to be amended by the Legislature to allow an injured workman to recover the cost of a prosthetic device, permits recovery for unlimited noncurative custodial care.

The majority opinion overrules Claus v. DeVere, 120 Neb. 812, 235 N. W. 450 (1931), and establishes a right to compensation for nursing care furnished by the wife at home. The rule denying such compensation under our statute has been settled law for 47 years (since 1931). So far as I can discover, it has never been challenged or disturbed by the Legislature. It is now abrupty overruled. It would seem clear that a rule of such established standing, interpreting the statute, should not be reversed except after a full hearing and examination in the legislative forum.

Plaintiff and the concurring opinion of Brodkey, J., cite numerous cases to us from other jurisdictions for the propositions that the long-range "reasonable medical and hospital services" include nursing home care, and that the nursing services of a wife are compensable. I have carefully examined these cases and find them inapplicable. These cases arise in different jurisdictions, under different statutory language, and are the products of different case law. I shall not attempt to distinguish each and every case in this dissent. Two examples, however, will suffice to illustrate the inappropriateness of these cases to the situation before us. In Daugherty v. City of Monett, 238 Mo. App. 924, 192 S. W. 2d 51 (1946), the Missouri workmen's compensation statute specifically required the employer to furnish

"medical, surgical and hospital treatment, *including nursing.*" (Emphasis supplied.) The statute did not require the nursing to be that of a trained professional. Thus, in allowing compensation for the nursing services of a wife, the Missouri court was merely following the directive of its Legislature. Again, in A. G. Crunkelton Electric Co., Inc. v. Barkdoll, 227 Md. 364, 177 A. 2d 252 (1962), that state's statute specifically held the employer liable for *"nurse* and hospital services." (Emphasis supplied.)

Time forbids further discussion.

Every wife now becomes a nurse — and a paid one. The claim here is already for 3,371 hours from August 2, 1975, to February 12, 1976. The plaintiff is elderly, but suppose he were 20 years younger? And the wedding vow "to care for him, in sickness and health" becomes, in part, an employer's financial burden.

Where does the majority opinion tell us where the marital obligation ceases and the paid nursing services begin? How does the fact-finder resolve the overlap between household duties and nursing care? For example, what portion of special diet preparation is paid for, et cetera? Is the time spent on a necessary exercise walk with the injured husband compensable? Where are the guidelines?

If there are professional criteria for the determination of such issues, it would seem particularly appropriate for their establishment in the legislative forum.

The question of the burden of proof is not met in the broad brush of the majority opinion. The evidence necessarily must come from and be developed under the protected cloak of the home and domestic privacy. It, perhaps, will be undisputed and invulnerable to attack. The recent experience of the federal government in administering the welfare programs points to caution in the context presented in this case.

There are a multitude of free welfare services and disability provisions now available in our society which did not exist at the time of the decision of this court in Claus v. DeVere, *supra,* or when the compensation statute was enacted. Whether any of this is relevant, I do not know. But I do know that this abrupt and far-reaching policy determination and reversal of settled law should not be made unless full opportunity for consideration and hearing of the competing considerations is had in the legislative forum.

Under the guise of judicial interpretation, the majority opinion has rewritten and liberalized recovery under the workmen's compensation laws. If such a result is desirable, the responsibility for the nature and amount of benefits accorded to the injured employee rests with the Legislature.

SPENCER and CLINTON, JJ., join in this concurrence and dissent.